## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | U.S. District Court for the Northern District of Illinois No. |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 08 CH 19160 |
| | ) | |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | FILED: JUNE 5, 2008 |
| | ) | 08 CV 3256     JH |
| Defendants. | ) | JUDGE ZAGEL |
| | | MAGISTRATE JUDGE COX |

### NOTICE OF REMOVAL

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1338, and 1441 *et seq.*, defendant Alan J. Ross ("Mr. Ross"), in his personal capacity and in his capacity as an unincorporated sole proprietorship d/b/a SAVE Associates ("SAVE"), by and through his undersigned counsel, expressly reserving any and all rights, claims, and defenses of any nature whatsoever, including but not limited to defenses related to service of process, jurisdiction, and venue, files this Notice of Removal effecting the removal of this action from the Circuit Court of Cook County, Illinois, County Department, Chancery Division, in which the action (the "State Court Action") is now pending, to the United States District Court for the Northern District of Illinois, Eastern Division, and respectfully show:

### Procedural Background

1.      On or about May 27, 2008, plaintiffs Balshe LLC ("Balshe") and The Simon Law Firm filed their Verified Complaint for Injunctive and Other Relief (the "Complaint"), styled *Balshe LLC and The Simon Law Firm v. Alan J. Ross and SAVE Associates*, Case No.

08CH19160, in the Circuit Court of Cook County, Illinois, County Department, Chancery Division. A copy of the Complaint, with exhibits thereto, is attached hereto as Exhibit A.

2.    On the same date, plaintiffs purported to serve Summonses on Mr. Ross and on SAVE. Copies of these two Summonses are attached hereto as Exhibits B and C, respectively.

3.    On May 28, 2008, without notice to Mr. Ross or to SAVE, and without either defendant or their counsel present, a temporary restraining order (the "TRO") was entered by the Circuit Court of Cook County, The Honorable Kathleen M. Pantle, presiding. A copy of the TRO is attached hereto as Exhibit D.

4.    On May 28, 2008, without notice to Mr. Ross or to SAVE, and without either defendant or their counsel present, an additional Order (the "Second Order") was entered by the Circuit Court of Cook County, The Honorable Kathleen M. Pantle, presiding. A copy of the Second Order is attached hereto as Exhibit E.

5.    Exhibits A, B, C, D, and E constitute all of the process, pleadings, and orders that have been served (or purportedly served) upon defendants Mr. Ross and SAVE within the meaning of 28 U.S.C. § 1446(a).

## Jurisdiction and Grounds for Removal

6.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that:

> (a)    each named defendant is (and was at the time the State Court Complaint was filed) a citizen of the Commonwealth of Massachusetts and of no other state;

2

(b)    no plaintiff is (or was at the time the State Court Complaint was filed) a citizen of the Commonwealth of Massachusetts; and

(c)    the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7.    Moreover, this Court has exclusive original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1338, in that this is a civil action arising under the patent laws of the United States, including but not limited to 35 U.S.C. § 261.

### Citizenship of Parties

8.    According to the Complaint, plaintiff Balshe is a "Delaware limited liability corporation [*sic*]." Complaint, ¶5. Upon information and belief, plaintiff Balshe is a limited liability company, each and every member of which is a citizen of the State of Illinois. Accordingly, plaintiff Balshe is a citizen of Illinois and of no other state.

9.    According to the Complaint, plaintiff The Simon Law Firm "is a sole proprietorship operated by David Simon." *Id.*, ¶6. David Simon is a citizen of the State of Illinois, having his domicile in Chicago, Illinois. Accordingly, plaintiff The Simon Law Firm is a citizen of Illinois and of no other state.

10.    Defendant Mr. Ross (as is conceded in the Complaint, at ¶7) is a citizen and domiciliary of the Commonwealth of Massachusetts.

11.    Defendant SAVE is described in the Complaint as "an unincorporated business entity operated by [Mr.] Ross, with its principal place of business in [the Commonwealth of Massachusetts]." In fact, SAVE Associates is a trade name utilized by Mr. Ross. To the extent

3

that defendant SAVE may be a legal entity independent of Mr. Ross, it is accordingly a citizen of Massachusetts and of no other state.

### Amount in Controversy

12.     Plaintiffs allege that their claims arise out of defendants' purported scheme to fraudulently obtain "extremely valuable confidential information" from plaintiffs.   Complaint, ¶1.

13.     Plaintiffs allege that defendants have demanded a "monetary ransom" in the amount of "$7,000,000." Id., ¶¶1, 3.

14.     Plaintiffs contend that their purported "New Business Plan," which defendants are alleged to have misappropriated, "would generate over a billion dollars in revenue within ten years," if not for defendants' misappropriation.  Id., ¶16 (emphasis in original).

15.     Plaintiffs describe their purported trade secrets, which defendants are alleged to have misappropriated, as having "enormous value" (Id. ¶17), "enormous commercial value" (Id. ¶19), and "great value" (Id. ¶73).

16.     Plaintiffs allege that, as a result of defendants' purported conduct, they have suffered and will continue to suffer "substantial damages." Id., ¶95.

17.     Plaintiffs allege that they agreed at arm's length to purchase the '390 Patent (as defined in the Complaint) for the amount of $75,000.00.  Id., ¶30.  Plaintiffs further demand that the Court order the transfer of the '390 Patent to plaintiffs.  Id., ¶¶79-84.

18.     Plaintiffs allege that the value of their purported "New Business Plan" is separate from and additional to the value of the '390 Patent.  Id., ¶¶15-16.

4

19.    In compensation for the various claims set forth in the Complaint, plaintiffs demand, inter alia, preliminary and permanent injunctive relief, attorneys' fees and costs of suit, "substantial damages," and "such other and further relief as is appropriate."  Id., ad damnum clauses following ¶¶65, 71, 78, 84, 90, 96, 107, 112, 117, 122, 127, & 134.

20.    Plaintiffs' Complaint makes plain that the amount in controversy in this action substantially exceeds the sum or value of $75,000.00, exclusive of interest and costs, within the meaning of 28 U.S.C. § 1332(a).

## Venue

21.    Pursuant to 28 U.S.C. § 1441(a), removal to the United States District Court for the Northern District of Illinois, Eastern Division, is proper, as this is the federal district court for the district and division embracing the place where the State Court Action is pending. Defendants expressly reserve all rights and defenses, including but not limited to those related to service of process, jurisdiction, and venue.

*    *    *

22.    This Notice of Removal is being filed within thirty (30) days of the receipt of the summons and complaint by the first-served Defendant, as required by 28 U.S.C. § 1446(b).  All requirements for removal have been met.

23.    Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be provided to Plaintiffs, and a copy of this Notice of Removal will be filed in the appropriate state court.

WHEREFORE, notice is given that this action is removed from the Circuit Court of Cook

County, Illinois, County Department, Chancery Division, to the United States District Court for

the Northern District of Illinois, Eastern Division.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: _____
One of the Attorneys Defendants Alan J.
Ross and SAVE Associates

Alan R. Lipton (6225472)
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 06061
Phone:  (312) 704-3161
Fax:  (312) 704-3001
alipton@hinshawlaw.com
Firm ID. No. 90384

OF COUNSEL:
David L. Braverman, Esq.
Richard S. Julie, Esq.
BRAVERMAN KASKEY, PC
One Liberty Place, 56th Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 575-3800
dbraver@braverlaw.com

Dated: June 5, 2008

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

BALSHE LLC and THE SIMON LAW FIRM    )
            )    U.S. District Court for the Northern
       Plaintiffs,       )    District of Illinois No.
            )
vs.              )    Case No.:  08 CH 19160
            )
ALAN J. ROSS and SAVE ASSOCIATES,    )
            )    08 CV 3256
       Defendants.      )    JUDGE ZAGEL
            )    MAGISTRATE JUDGE COX

**EXHIBIT "A" TO NOTICE OF REMOVAL**

(Rev. 12/4/00) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT / CHANCERY DIVISION

| | |
|---|---|
| BALSHE LLC and THE SIMON LAW FIRM,<br>Plaintiff | )<br>)<br>) |
| v. | ) Case No. |
| ALAN J. ROSS and SAVE ASSOCIATES,<br>Defendants | )<br>)<br>) |

**08CH 19160**

## CHANCERY DIVISION CIVIL COVER SHEET

A Chancery Division Civil Cover Sheet shall be filed with the initial complaint in all actions filed in the Chancery Division. The information contained herein is for Administrative purposes only and shall not be introduced into evidence. Please check the box in front of the appropriate category which best characterizes your action being filed.

005 _____ Administrative Review
006 _____ Change of Name
001 _____ Class Action
002 _____ Declaratory Judgment
004 _✔_ Injunction
008 _____ Mechanic's Lien
003 _____ Mortgage Foreclosure

007 _✔_ General Chancery
_____ Accounting
_____ Arbitration Award
_____ Certiorari
_____ Dissolution of Corporation
_____ Dissolution of Partnership
_____ Equitable Lien
_____ Interpleader
_____ Mandamus
_____ Ne Exeat

____ Partition
____ Quiet Title
____ Quo Warranto
____ Redemption Rights
____ Reformation of a Contract
____ Rescission of a Contract
_✔_ Specific Performance
____ Trust Construction
____ Other _____

By: _____
         Attorney                                          Pro Se

Atty. No.: 91731
Name: Novack and Macey LLP (PAF/RLM/RGD)
Atty. for: Plaintiff
Address: 100 N. Riverside Plaza
City/State/Zip: Chicago, IL 60606
Telephone: (312) 419-6900
#220878

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | **08CH19180** |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs Balshe LLC ("Balshe") and The Simon Law Firm (the "Simon Firm") for their

Verified Complaint for Injunctive and Other Relief against Defendants Alan J. Ross ("Ross") and

SAVE Associates ("SAVE"), allege as follows:

### NATURE OF THE ACTION

1.      This action arises out of Defendants' scheme to fraudulently obtain extremely

valuable confidential information and trade secrets belonging to Plaintiffs and to extort and steal

millions of dollars from them.  Indeed, once Defendants received the trade secrets and confidential

information from Plaintiffs and $25,000 of Plaintiffs' money, they knowingly violated their

contractual and fiduciary duties to Plaintiffs by wrongfully:  (a) demanding a monetary ransom to

keep Plaintiffs' information secret; (b) withholding delivery of a patent that Plaintiffs purchased

from Defendants; and (b) attempting to sell Plaintiffs' patent, trade secrets and confidential

information to third parties.

2.      The parties' relationships are governed by three written contracts -- all of which

Defendants have violated.  Among other things, the three agreements were designed to:  (a) transfer

all right, title and interest in Patent No. 5,974,390 (the "'390 Patent") from Defendants to Balshe (the

"'390 Patent Purchase Agreement"); (ii) allow Plaintiffs to safely disclose to Defendants how the '390 Patent could be used in an extremely profitable manner (the "Non-Disclosure Agreement"); and (iii) provide for Defendants to share in the profits from Plaintiffs' development and use of the '390 Patent by serving as a consultant to Plaintiffs (the "Consulting Agreement").

3. Defendants have now threatened that unless Plaintiffs agree to pay them $7,000,000, Defendants will sell the '390 Patent along, with Plaintiffs' confidential business plans, to an undisclosed third party.

4. Plaintiffs seek to: (a) preliminarily and permanently restrain and enjoin Defendants from further wrongful dissemination of Plaintiffs' confidential information; (b) preliminarily and permanently restrain and enjoin Defendants from transferring to any party other than Plaintiffs any right, title or interest in, or corporate opportunities related to, the '390 Patent; (c) specifically enforce the '390 Patent Purchase Agreement; (d) recover damages and disgorgement of all profits and other compensation received or to be received by Defendants resulting from breaches of their contractual and fiduciary obligations; and (e) recover damages, including punitive damages, arising from Defendants' misappropriation of trade secrets and fraud.

## PARTIES, JURISDICTION AND VENUE

5. Plaintiff Balshe LLC is a Delaware limited liability corporation with its principal place of business located within Cook County, Illinois. Balshe was formed to develop and pursue the economic opportunities relating to the '390 Patent.

6. Plaintiff The Simon Firm is a sole proprietorship operated by David Simon ("Simon"), with its principal place of business located in Cook County, Illinois.

7. Defendant Ross is a citizen of the Commonwealth of Massachusetts.

2

8.      Defendant SAVE is an unincorporated business entity operated by Ross, with its principal place of business located at 687 Highland Avenue, Needham, MA 02494.

9.      This Court has personal jurisdiction over Defendants because they expressly consented to jurisdiction in the State of Illinois in the contracts at issue in this suit. Additionally, this Court has personal jurisdiction over Defendants pursuant to, among other thing, 735 ILCS 5/2-209(a)(1), because this action arises out of Defendants' transaction of business within the State of Illinois and, pursuant to 735 ILCS 5/2-209(a)(7), because this action arises out of the making and performance of contracts and promises by Defendants in this State.

10.     Venue is proper in the Circuit Court of Cook County, pursuant to 735 ILCS 5/2-101, because, among other things: (a) Defendants in this action are all non-residents of the State of Illinois and, thus, venue is proper in any county; and (b) the transactions or some part thereof out of which the causes of action arose occurred in Cook County, Illinois.

## GENERAL ALLEGATIONS

### The '390 Patent

11.     On or about July 21, 1997, Ross filed an application for the '390 Patent with the United States Patent and Trademark Office. On or about the same date, Ross assigned (the "AXA Assignment") a one half-interest in the '390 Patent to the Mutual Life Insurance Company of New York, which interest is presently held through succession by an affiliate of the AXA Group ("AXA"). Ross received no up-front compensation for the AXA Assignment.

12.     The '390 Patent was issued by the United States Patent and Trademark Office on or about October 26, 1999. Ross' one half interest in the '390 Patent shall be referred to herein as the "Ross '390 Patent Interest," and AXA's one half interest in the '390 Patent shall be referred to herein as the "AXA '390 Patent Interest."

3

13.     The '390 Patent sets forth a system of pooling life insurance policies into a trust to create predictable income streams for the trust owners.  For example, if a company held life insurance policies on five of its key executives, the income derived from those policies would be received at irregular times and in large lump sums at the time of each insured's death.  The '390 Patent provides for a system that allows that company to pool its life insurance policies with policies owned by other companies.  In this way, payouts occur more frequently due to the increased number of policies, and the payouts are divided according to a formula among the trust owners.  The result is a smoother and more predictable cash flow for all of the participant companies (the "Cash Flow Benefit").

**The New Business Plan**

14.     In the second half of 2007, Defendants approached Simon concerning a possible sale of the Ross '390 Patent Interest.  When Simon and Ross first met, Defendants had failed over the past eight years to recruit a single participant to join any '390 Patent trust arrangement.  Defendants had not even formed any trust pursuant thereto.  Indeed, Defendants had not generated even a single dollar of revenue from the operation of a trust pursuant to the '390 Patent.

15.     Simon realized that the reason why Ross was unable to profit from the '390 Patent was because of his flawed and myopic business strategy -- Ross believed at that time that the '390 Patent could only be expected to generate a few hundred thousand dollars of revenue per year.  But, Simon recognized that that was not the case.  He saw that the value of the '390 Patent could be greatly enhanced if it was integrated into a business plan that leveraged the infrastructure of major institutions and captured revenue from major trends transforming the insurance and financial products markets (the "New Business Plan").

16.    Simon and his business associates had tremendous expertise, contacts and experience in these other markets. And Simon recognized that any implementation of the New Business Plan to the '390 Patent would generate over a billion dollars in revenue within ten years. Ross had no experience, knowledge or expertise in these markets and did not realize how opportunities presented by transformative shifts in other industries could be used to significantly enhance the value of the '390 Patent.

17.    Due to its enormous value, Simon and the investors took great precautions against disclosure of the New Business Plan. Among other things, at the time that Simon began discussion with Ross, the elements of the New Business Plan were known only to Simon and a few of the key members of his investor group and third-parties who had entered into appropriate confidentiality agreements.

18.    In late 2007, the Simon Firm entered into negotiations regarding the purchase of the '390 Patent. To facilitate due diligence with respect to the purchase of the '390 Patent, Simon agreed to provide information to Defendants concerning the New Business Plan through the Simon Firm, as attorneys for, and agents of, the group of investors who would form Balshe.

19.    Because of the enormous commercial value of the New Business Plan, Simon required that Defendants agree to maintain the New Business Plan and all information related thereto as confidential, and not to disclose it to any other parties except through the Simon Firm. Although Defendants had provided Simon with Defendants' boilerplate Confidentiality and Non-Disclosure Agreement, Simon was concerned that Defendants' form agreement was insufficient to protect the confidentiality of the New Business Plan. Accordingly, Simon specifically negotiated the inclusion of Paragraph 3(D) in the agreement to protect the New Business Plan from any disclosure except

5

through the Simon Firm, and to require that SAVE would not attempt to circumvent the Simon Firm should it wish to implement the New Business Plan.

20.    Specifically, Paragraph 3(D) of the final Non-Disclosure Agreement provides as follows:

> SAVE acknowledges that [Simon Law] is an active member of the life insurance space and has developed expertise in marketing, administration and has developed proprietary contacts and relationships. SAVE may be exposed to [Simon Law's] ideas and/or contacts and will not circumvent [Simon Law] should SAVE be desirous of utilizing [Simon Law's] strategies and/or contacts.

21.    The Non-Disclosure Agreement was executed by the Simon Firm and SAVE on or about December 10, 2007 and December 18, 2007, respectively. A copy of the Non-Disclosure Agreement is attached hereto as Exhibit A.

22.    In reliance upon the Non-Disclosure Agreement, the Simon Firm disclosed to Defendants the New Business Plan and certain refinements and developments thereto.

## Defendants Agree to Sell the '390 Patent to Plaintiffs

23.    On or about December 30, 2007, Simon sent Ross an e-mail setting forth the preliminary terms for the purchase of the '390 Patent by Plaintiffs. On the same date, Ross responded by acknowledging that the email represented an accurate summary of the parties' discussions, and confirming Defendants' intention to continue negotiations with Simon. Among other things, the parties agreed that Ross would act as a consultant for Plaintiffs in the use of the '390 Patent, for which Ross would receive a monthly salary and a share of Plaintiffs' profits.

24.    In reliance on the Non-Disclosure Agreement, Simon, Nicomedes Sy Herrera ("Herrera") and other members of the investor group met with Ross on or about January 9, 2008. During that meeting, they described the New Business Plan to Ross and informed him that a critical

6

aspect of that plan required Plaintiffs to acquire an option to repurchase the AXA '390 Patent Interest. Ross agreed (in his role as Plaintiffs' consultant) to negotiate a purchase option with AXA on Plaintiffs' behalf.

25.    In reliance on Ross' representation that he would negotiate on Plaintiffs' behalf to acquire for them an option on the AXA '390 Patent Interest, Plaintiffs hired experts and other third-party consultants to conduct further evaluation and refinement of the New Business Plan.

26.    Thereafter, Ross attended two meetings in Chicago, on or about February 27 and 28, 2008. During those meetings, Ross told Simon and Herrera that AXA seemed unwilling to sell an option on the AXA '390 Patent Interest. At Plaintiffs' request, Ross agreed to continue negotiating with AXA on Plaintiffs' behalf.

27.    During the February 27 and 28 meetings, Ross also told Simon and Herrera that he was attempting to persuade Wells Fargo Bank, N.A. ("Wells Fargo") to participate in a trust established pursuant to the '390 Patent. Ross further told Simon and Herrera that Wells Fargo was already conducting its own due diligence regarding the '390 Patent.

28.    Also during the February 27 meeting, Ross met with one of Plaintiffs' consultants who had been retained to further refine and develop the New Business Plan. Based on Ross' representation and promise that he would negotiate to acquire on Plaintiffs' behalf the AXA 390 Patent Interest, Plaintiffs, with Ross's input, directed the consultant to perform additional work to refine the New Business Plan.

29.    Thereafter, the parties began discussing the written documents that would effectuate their agreements regarding the transfer of the '390 Patent and Ross' consulting arrangement. In March 2008, while these discussions were ongoing, Ross told Simon that he needed at least $25,000

of the purchase price of the '390 Patent immediately because he was broke and needed to make a payment to the Internal Revenue Service for unpaid taxes.

30.     In April 2008, the parties agreed that Balshe would purchase the '390 Patent from Defendants for $75,000.00, pursuant to an Agreement for Purchase of Pooled Benefits Trust Patent No. 5,974,390 (the "'390 Patent Purchase Agreement").  Because Balshe had not been officially formed at that time, it was referred to in the agreement as Newco.

31.     Additionally, the parties agreed that Ross would enter into a consulting agreement with STP Enterprises, Inc. pursuant to an Agreement Regarding Pooled Benefits Trusts (the "Consulting Agreement"), which agreement would be assigned to Balshe or an affiliate to be formed.

32.     In connection therewith, on or about April 9, 2008, Simon sent a draft of the '390 Patent Purchase Agreement and the Consulting Agreement to Defendants *via* email.

33.     Over the next few days, Ross (on behalf of himself and SAVE) and Simon (on behalf of Balshe and its predecessors) had numerous conversations regarding the final language of the '390 Patent Purchase Agreement and the Consulting Agreement.

34.     On or about April 13, 2008, Ross and Simon reached agreement on the final terms of the '390 Patent Purchase Agreement and the Consulting Agreement.  Specifically, during a telephone conference held that day, after discussing the final terms of the agreements, Ross agreed to the terms and told Simon "We have a deal."

35.     Simon updated the drafts with the final terms agreed to between Plaintiffs and Defendants.  On or about April 14, 2008, Simon emailed for Ross's signature the final versions of the '390 Patent Purchase Agreement and Consulting Agreement that had been agreed to by the parties during the April 13 telephone conference.  Copies of the '390 Patent Purchase Agreement and Consulting Agreement are attached hereto, respectively, as Exhibits B and C.

36.     On April 14, 2008, at Ross' request and in reliance on Ross's acknowledgement and confirmation that the parties had entered into the '390 Patent Purchase Agreement and the Consulting Agreement, Simon sent to Ross by wire transfer $25,000 of the purchase price for the '390 Patent. Ross received and accepted these funds.

37.     Pursuant to an Assignment, Balshe has now acquired all of STP's rights under the Consulting Agreement. A copy of the Assignment is attached hereto as Exhibit D.

**Ross Reaffirms The Parties' Agreements**

38.     Shortly after receiving the $25,000 installment of the purchase price under the '390 Patent Purchase Agreement, Ross requested that the parties make some additional changes to the written agreements before signing them because -- as Ross put it -- he wanted to provide a stream of income to his children and receive an additional portion of his consulting fees up-front. Ross also wanted certain protections in case the New Business Plan failed to generate sufficient revenue to pay him a minimum consulting fee. Even though the parties had already agreed on the final terms of the '390 Patent Purchase Agreement and the Consulting Agreement, Simon agreed to meet with Ross to consider amending the agreements as a gesture of goodwill and to preserve an amicable working relationship.

39.     To that end, Ross, Simon and Herrera had a series of personal meetings during the week of April 21-25, 2008, concerning Ross's requested amendments. During those meetings, Ross acknowledged that the parties had already finalized the terms of their agreement and that he was requesting only minor amendments to those terms.

40.     More specifically, on or about April 22, 2008, Ross met with Simon and Herrera at 1230 Avenue of the Americas, New York, New York. At that meeting, Ross told Simon and Herrera

9

that he acknowledged the fact that the parties had already reached an agreement, but that he was looking for only a few minor accommodations.

41.    On April 23, 2008, Ross and Herrera met in Manhattan to discuss Ross's consulting efforts on behalf of Plaintiffs. Ross told Herrera that he would introduce Plaintiffs to Wells Fargo so that Balshe could ensure that the terms of any agreement with Wells Fargo would be consistent with the New Business Plan.

42.    On April 24, 2008, Herrera and Ross met at the Boat Basin Café in Manhattan. At this meeting, Herrera expressed his concern that Ross had failed to return the signature pages to the '390 Patent Purchase Agreement and the Consulting Agreement and had not yet introduced Plaintiffs to Wells Fargo. In response, Ross reassured Herrera that the parties had a deal and that he only wanted to iron out a few minor points with Simon before sending the signed signature pages back.

**Defendants Secretly Steal The AXA '390 Patent Interest**

43.    By reason of the foregoing, Ross was required to negotiate for the repurchase of the AXA '390 Patent Interest on behalf of Plaintiffs, and Plaintiffs relied upon Defendants to negotiate for the repurchase of the AXA '390 Patent Interest on Plaintiffs' behalf.

44.    In fact, Ross was secretly negotiating to acquire an option on the AXA '390 Patent Interest for himself. Moreover, as detailed below, Ross was eventually successful in obtaining that option for Defendants, thus misappropriating and usurping the opportunity from Plaintiffs.

**Defendants Attempt To Extort Plaintiffs**

45.    On or about May 16, 2008, Ross contacted Simon by telephone and revealed his secret self-dealing. Ross admitted to Simon that he had "changed his mind" about honoring the parties agreements and that, given the value of the '390 Patent when combined with the New Business Plan as described to him by Plaintiffs, he wanted a better deal.

46.     Indeed, contrary to his prior statements and the parties agreements, during the call Ross suddenly -- and for the first time -- claimed that there was never any agreement between the parties with respect to the '390 Patent.

47.     Ross also revealed that he had obtained an option to purchase the AXA '390 Patent Interest even though he previously represented to Simon and Herrera that AXA was unwilling to grant such an option.

48.     Ross then announced that he had secretly "tied up" the '390 Patent for himself and would not honor any of the parties' agreements.

49.     Then, on or about May 19, 2008, Simon and Herrera learned that Ross was actively "shopping" the New Business Plan to other investors in an attempt to sell them the '390 Patent along with the New Business Plan, in blatant violation of his duties under the Non-Disclosure Agreement, the '390 Patent Purchase Agreement, the Consulting Agreement and in violation of his fiduciary duties.

50.     On the same day, Ross sent Simon an email demanding that Balshe pay Ross -- not the remainder of the agreed-upon price of $75,000 -- but, instead, the extortionate amount of $7,000,000, plus ongoing royalties and commissions.

51.     Finally, on or about May 23, 2008, Ross admitted that he intends to negotiate with various third-parties to consummate a sale of the '390 Patent and the New Business Plan.  Ross intends to finalize such a sale sometime between May 27, 2008 and May 30, 2008.

52.     In addition to the violation of numerous contractual, statutory and common law obligations, Ross has threatened, and continues to threaten, Plaintiffs that, if Balshe does not give in to his outrageous and unlawful demand for payment, he will disclose to yet more third-parties the highly confidential New Business Plan and will immediately attempt to sell it and the '390 Patent.

53.     In fact, on or about May 23, 2008, Ross told another investor in Balshe that Ross was "not concerned with litigation costs," suggesting that he has already obtained an indemnification agreement from the undisclosed third-party against the costs of this suit, essentially acknowledging that his actions have been and are unlawful and recognizing the inevitability of this lawsuit.

54.     Unless Ross is immediately restrained and enjoined from carrying out his threats, Balshe will lose its entire business, including the value of the New Business Plan.

## COUNT I

## INJUNCTIVE RELIEF TO PREVENT
## DISCLOSURE OF THE NEW BUSINESS PLAN

55.     Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

56.     The New Business Plan constitutes a "Trade Secret," as that term is defined in 765 ILCS § 1065/2(d).

57.     Defendants obtained the New Business Plan from Simon and the Simon Firm through improper means, including, without limitation, false statements, material misrepresentations and breaches of a confidential relationship.

58.     Defendants have misappropriated the New Business Plan by disclosing it to an unknown number of third parties, in an attempt to sell it for their own benefit.

59.     Defendants have threatened to further misappropriate the New Business Plan by selling it and the '390 Patent to a third-party.

60.     Defendants' misappropriation of the New Business Plan was willful and malicious, and was done in an attempt to extort money from Balshe.

61.     Based on the foregoing, Defendants should be immediately restrained and enjoined from any further misappropriation of the New Business Plan and from any further use or disclosure thereof.

62.     Pursuant to 735 ILCS § 1065/3(c), which authorizes affirmative injunctive relief where necessary to protect a trade secret, in order to protect the New Business Plan from further use and disclosure, Defendants should be ordered to: (a) identify to Balshe the third-parties to whom they disclosed the New Business Plan; (b) inform those third-parties that further disclosure or use of the New Business Plan is prohibited; and (c) destroy all information concerning or reflecting the New Business Plan in their possession.

63.     Plaintiffs have no adequate remedy at law with respect to Defendants' actual and threatened misappropriation of the New Business Plan.

64.     Plaintiffs will be irreparably harmed if the relief requested herein is not granted.

65.     There is a strong likelihood that Plaintiffs will succeed on the merits of its claims against Defendants.

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Defendants as follows:

A.     Preliminarily and permanently restraining and enjoining Defendants from using or disclosing the New Business Plan;

B.     Commanding Defendants to identify the third-parties to whom they have already disclosed the New Business Plan;

C.     Commanding Defendants to inform the third-parties to whom they have already disclosed the New Business Plan that further use or disclosure thereof is prohibited;

13

D.    Commanding Defendants to destroy all information concerning the New Business Plan in their possession;

E.    Awarding Balshe its attorney's fees pursuant to 765 ILCS § 1065/5.

F.    Awarding Balshe its costs of suit; and

G.    Awarding Balshe such other and further relief as is appropriate.

### COUNT II

### INJUNCTIVE RELIEF TO PREVENT DISCLOSURE OF THE NEW BUSINESS PLAN

66.    The Simon Firm incorporates by reference paragraphs 1 through 54 above as though fully set forth herein.

67.    Pursuant to the Non-Disclosure Agreement, among other things, Defendants are prohibited from disclosing the strategies of the Simon Firm, including the New Business Plan, in any manner except through the Simon Firm.

68.    Defendants' disclosure of the New Business Plan, and their threatened continued disclosure thereof, are in direct violation of the Non-Disclosure Agreement.

69.    The Simon Firm has no adequate remedy at law with respect to Defendants' breaches of the Non-Disclosure Agreement.

70.    The Simon Firm will be irreparably harmed if the relief requested herein is not granted.

71.    There is a strong likelihood that the Simon Firm will succeed on the merits of its claims against Defendants.

WHEREFORE, the Simon Firm respectfully requests the entry of judgment in its favor and against Defendants as follows:

14

A.    Preliminarily and permanently restraining and enjoining Defendants from using or

disclosing the New Business Plan;

B.    Awarding the Simon Firm its costs of suit; and

C.    Awarding the Simon Firm such other and further relief as is appropriate.

## COUNT III

### INJUNCTIVE RELIEF TO
### PREVENT TRANSFER OF THE '390 PATENT

72.    Balshe incorporates by reference paragraphs 1 through 54 above as though fully set

forth herein.

73.    The '390 Patent represents a unique asset which, particularly when coupled with the

New Business Plan, is of great value.

74.    Defendants are required to transfer all of their right, title and interests in the '390

Patent to Balshe.

75.    Defendants have threatened to transfer the '390 Patent to one or more third-parties, in

violation of Balshe's rights.

76.    Balshe has no adequate remedy at law with respect to Defendants' threatened breach

of their obligations to transfer the '390 Patent to Balshe.

77.    Balshe will be irreparably harmed if the relief requested herein is not granted.

78.    There is a strong likelihood that Balshe will succeed on the merits of its claims

against Defendants.

WHEREFORE, Balshe respectfully requests the entry of judgment in its favor and against

Defendants as follows:

A.      Preliminarily and permanently restraining and enjoining Defendants from transferring any of their right, title and interest in the '390 Patent to any person or entity other than Balshe;

B.      Awarding Balshe its costs of suit; and

C.      Awarding Balshe such other and further relief as is appropriate.

**COUNT IV**

**SPECIFIC PERFORMANCE**

79.      Balshe incorporates by reference paragraphs 1 through 54 above as though fully set forth herein.

80.      The '390 Patent Purchase Agreement is valid, biding and enforceable.

81.      Balshe (and its assignors) have fully complied with all material terms of the '390 Patent Purchase Agreement and/or Balshe stands ready willing and able to fully perform any remaining obligations due thereunder.

82.      Defendants have materially breached the '390 Patent Purchase Agreement and presently refuse to perform thereunder.

83.      Balshe has no adequate remedy at law.

84.      By reason of the foregoing, the Court should order Defendants to specifically perform all of their obligations under the '390 Patent Purchase Agreement, including, without limitation, tendering to Balshe all of Defendants' right, title and interest to the '390 Patent.

WHEREFORE, Balshe respectfully requests the entry of judgment in its favor and against Defendants as follows:

A.      Ordering Defendants to specifically perform under the '390 Patent Purchase Agreement;

B.    Ordering Defendants to tender to Balshe all of Defendants' right, title and interest to the '390 Patent;

C.    Awarding Balshe its costs of suit; and

D.    Awarding Balshe such other and further relief as is appropriate.

## COUNT V

## <u>VIOLATION OF ILLINOIS TRADE SECRETS ACT</u>

85.    Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

86.    The New Business Plan constitutes a "Trade Secret," as that term is defined in 765 ILCS § 1065/2(d).

87.    Defendants obtained the New Business Plan from Simon and the Simon Firm through improper means, including, without limitation, misrepresentations and breach of a confidential relationship.

88.    Defendants have misappropriated the New Business Plan by disclosing it to an unknown number of third parties, in an attempt to sell it for their own benefit.

89.    Defendants' misappropriation of the New Business Plan was willful and malicious, and was done in an attempt to extort money from Balshe.

90.    As a proximate cause of Defendants' misappropriation of the New Business Plan, Plaintiffs have suffered, and are continuing to suffer, actual losses and Defendants have been, and are continuing to be, unjustly enriched.

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Defendants as follows:

17

A.    Awarding damages in their favor and against Defendants in an amount to be determined at trial;

B.    Awarding pre- and post-judgment interest on such damages;

C.    Awarding exemplary damages pursuant to 765 ILCS § 1065/4(b)

D.    Awarding Plaintiffs their attorney's fees pursuant to 765 ILCS § 1065/5.

E.    Awarding Plaintiffs their costs of suit; and

F.    Awarding Plaintiffs such other and further relief as is appropriate.

## COUNT VI

### BREACH OF FIDUCIARY DUTY

91.    Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

92.    At all relevant times, Ross was a consultant to STP pursuant to the Consulting Agreement.  As a consultant of STP, Ross owed fiduciary duties to STP, including, without limitation, the duties of undivided loyalty, good faith, honesty and fair dealing.

93.    Despite Ross's fiduciary duties to STP, as described herein, Ross breached his duties by, among other things, misappropriating the New Business Plan, secretly dealing with AXA for his own benefit to the detriment of STP, misrepresenting material facts to STP in furtherance of his own interest and otherwise acting in flagrant disregard of his obligations to STP.

94.    The foregoing conduct was willful, wanton and malicious, and was undertaken with callous disregard for STP's rights and business interests.

95.    As a direct and proximate result of the foregoing wrongful conduct, STP suffered, and Balshe (as assignee of STP's rights under the Consulting Agreement) has suffered and continues to suffer, substantial damages.

96.    To the extent SAVE has a separate existence from Ross, it intentionally and knowingly colluded and participated in Ross's breaches of his fiduciary duties as alleged herein.

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Defendants as follows:

A.    Directing Defendants to disgorge to Plaintiffs all benefits they received or will receive, directly or indirectly, from any corporate opportunity usurped by Defendants;

B.    Imposing a constructive trust on, and ordering that the Defendants convey to Plaintiffs, all property, and any proceeds of such property, acquired by them or to be acquired by them from the date that they first breached their fiduciary duties to Plaintiffs, including all right, title and interest in and to the AXA '390 Patent Interest;

C.    Directing that Defendants forfeit all compensation, consideration or other profits they have received or will receive from the date they first breached their fiduciary duties to Plaintiffs;

D.    Awarding Plaintiffs punitive damages, in an amount to be determined at trial, against Defendants to punish them and to deter such conduct in the future;

E.    Awarding Plaintiffs their costs of suit; and

F.    Awarding Plaintiffs such other and further relief as is appropriate.

## COUNT VII

## PROMISSORY FRAUD

97.     Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

98.     As set forth herein, when Ross approached the Simon Firm regarding the sale of the '390 Patent, Ross had been unable to utilize the '390 Patent to generate any revenue, despite that it had been issued for more than eight years.

99.     Simon told Ross that the Simon Firm believed that it could generate pursuant to the New Business Plan over a billion dollars in revenue within ten years. However, Simon would not disclose the New Business Plan to Ross except in connection with a sale of the '390 Patent.

100.    Ross therefore represented to Simon that he was willing to sell the '390 Patent to the Simon Firm or one of its business affiliates when, in fact, Ross knew that he never intended to sell the '390 Patent to Simon or any entity affiliated with Simon. Instead, Ross lied to Simon to induce the Simon Firm to reveal the New Business Plan to Ross.

101.    Although Ross entered into the Non-Disclosure Agreement described herein and agreed not to disclose the New Business Plan to any other person, Ross never intended to honor the Non-Disclosure Agreement. Rather, he lied to Simon in order to obtain the New Business Plan so that he could use it and disclose it to third parties for his own benefit.

102.    In reasonable reliance on Ross's representations, particularly in light of the Non-Disclosure Agreement, the Plaintiffs disclosed the New Business Plan to Ross.

103.    Additionally, on or about April 14, 2008, after negotiations for the sale of the '390 Patent, Ross agreed that he and Balshe "had a deal." Ross then requested that, in light of that deal, Simon wire him $25,000 as an advance payment.

20

104.    In fact, Ross knew at the time that he made this statement that he never intended to honor the '390 Patent Purchase Agreement.  Instead, it was a ploy by Ross to obtain $25,000 from Simon to pay his debts to the Internal Revenue Service.

105.    In reasonable reliance on Ross's representation, Plaintiffs wired Ross $25,000 as an initial payment for the '390 Patent.

106.    Plaintiffs reliance on Ross's misrepresentations proximately caused substantial damages to Plaintiffs, including the $25,000 wire transfer, the misappropriation of the New Business Plan, the loss of value to the New Business Plan, and the professional expenses incurred in evaluating the '390 Patent, developing the New Business Plan and negotiating the '390 Patent Purchase Agreement.

107.    Ross's untrue statements alleged herein were part of scheme or device to defraud the Plaintiffs into paying Ross $25,000 and disclosing the New Business Plan.

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Defendants as follows:

A.    Awarding damages in their favor and against Defendants in an amount to be determined at trial;

B.    Awarding pre- and post-judgment interest on such damages;

C.    Awarding Plaintiffs punitive damages, in an amount to be determined at trial, against Defendants to punish them and to deter such conduct in the future;

D.    Awarding Plaintiffs their costs of suit; and

E.    Awarding Plaintiffs such other and further relief as is appropriate.

## ALTERNATIVE COUNT VIII

## BREACH OF CONTRACT

108.    Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

109.    This Count is pleaded in the alternative.

110.    The Non-Disclosure Agreement is valid, binding and enforceable.

111.    Plaintiffs have fully complied with all material terms of the Non-Disclosure Agreement, or their performance has been excused or waived due to Defendants' actions and/or by operation of law.

112.    Defendants have materially breached the Non-Disclosure Agreement, which has caused damages to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Defendants as follows:

A.    Awarding damages in their favor and against Defendants in an amount to be determined at trial;

B.    Awarding pre- and post-judgment interest on such damages;

C.    Awarding Plaintiffs their costs of suit; and

D.    Awarding Plaintiffs such other and further relief as is appropriate.

## ALTERNATIVE COUNT IX

## BREACH OF CONTRACT

113.    Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

114.    This Count is pleaded in the alternative.

22

115.　The '390 Patent Purchase Agreement is valid, binding and enforceable.

116.　Plaintiffs have fully complied with all material terms of the '390 Patent Purchase Agreement, or their performance has been excused or waived due to Defendants' actions and/or by operation of law.

117.　Defendants have materially breached the '390 Patent Purchase Agreement, which has caused damages to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Defendants as follows:

A.　Awarding damages in their favor and against Defendants in an amount to be determined at trial;

B.　Awarding pre- and post-judgment interest on such damages;

C.　Awarding Plaintiffs their costs of suit; and

D.　Awarding Plaintiffs such other and further relief as is appropriate.

### ALTERNATIVE COUNT X

### BREACH OF CONTRACT

118.　Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

119.　This Count is pleaded in the alternative.

120.　The Consulting Agreement is valid, binding and enforceable.

121.　Plaintiffs have fully complied with all material terms of the Consulting Agreement, or their performance has been excused or waived due to Defendants' actions and/or by operation of law.

122.　Defendants have materially breached the Consulting Agreement, which has caused damages to Plaintiffs.

23

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Defendants as follows:

A.   Awarding damages in their favor and against Defendants in an amount to be determined at trial;

B.   Awarding pre- and post-judgment interest on such damages;

C.   Awarding Plaintiffs their costs of suit; and

D.   Awarding Plaintiffs such other and further relief as is appropriate.

## ALTERNATIVE COUNT XI

### UNJUST ENRICHMENT

123.   Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

124.   This Count is pleaded in the alternative to one or more of Counts III through VII, in the event that the Court finds that the '390 Patent Purchase Agreement and/or the Consulting Agreement are not valid and enforceable.

125.   Defendants have received the benefit of the disclosure of the extremely valuable New Business Plan, all profits reaped or to be obtained by Defendants through their use and disclosure thereof, and the $25,000 wire transfer to Ross.

126.   Plaintiffs have suffered a detriment on account of the benefits Defendants have received, including, without limitation, the lost revenues and profits to be gained through the New Business Plan, the value of the New Business Plan and the loss of the $25,000 wire transfer.

127.   Defendants' retention of the benefits herein described would violate the principles of justice, equity, and good conscience.

24

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Defendants as follows:

A.    Awarding damages in their favor and against Defendants in an amount to be determined at trial;

B    Imposing a constructive trust upon the New Business Plan and all profits or other benefits derived or to be derived therefrom, and naming Plaintiffs the beneficiaries thereof;

C.    Awarding pre- and post-judgment interest;

D.    Awarding Plaintiffs their costs of suit; and

E.    Awarding Plaintiffs such other and further relief as is appropriate.

## ALTERNATIVE COUNT XII

## PROMISSORY ESTOPPEL

128.    Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

129.    This Count is pleaded in the alternative to one or more of Counts III through VII and IX in the event that the Court finds that the '390 Patent Purchase Agreement and/or the Consulting Agreement are not valid and enforceable.

130.    Defendants promised to negotiate to acquire on Plaintiffs' behalf the AXA '390 Patent Interest.  Defendants also promised Plaintiffs that they would not disclose Plaintiffs' confidential information and trade secrets to others.

131.    Defendants expected and intended that Plaintiffs would rely on these promises to induce Plaintiffs to: (a) disclose the New Business Plan and educate Ross as to how to implement it;

(b) engage consultants and experts to further analyze and develop the New Business Plan; and (c) wire the $25,000 to Ross.

132.    In reliance on Defendants' promise, Plaintiffs: (a) disclosed the New Business Plan and educated Ross as to how to implement it; (b) engaged consultants and experts to further analyze and develop the New Business Plan; and (c) wired the $25,000 to Ross.

133.    Ross has now obtained a right to purchase the AXA '390 Patent Interest.

134.    Injustice can only be avoided in these circumstances by requiring Defendants to assign and transfer to Plaintiffs all of their right, title and interest to the '390 Patent.

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Defendants as follows:

A.    Ordering Defendants to tender to assign and transfer to Plaintiffs all of Defendants' right, title and interest to the '390 Patent;

B.    Awarding Balshe its costs of suit; and

C.    Awarding Balshe such other and further relief as is appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

BALSHE LLC and THE SIMON LAW FIRM

By:
One Of Their Attorneys

P. Andrew Fleming
Richard L. Miller II
Richard G. Douglass
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Firm I.D. 91731
Doc# 220875

<u>**VERIFICATION**</u>

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in the foregoing Verified Complaint For Injunctive And Other Relief are true and correct, to the best of his information and belief.

Dated: May 27, 2008

David Simon

# EXHIBIT A

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This agreement ("Agreement") is effective this 12th day of September, 2007, by and between Alan J. Ross/SAVE Associates, 687 Highland Avenue, Needham, MA. 02494 (hereinafter "SAVE") and The Simon Law Firm, 303 E. Wacker Drive, Suite 210, Chicago, Illinois 60601 (hereinafter "recipient").

WHEREAS, SAVE desires to make available certain information to recipient and its employees, subcontractors and/or other agents (which shall collectively be referred to hereinafter as "Recipient") in connection with discussions and /or transfer of proprietary programs and/or software, concerning certain administrative, marketing, accounting, legal or actuarial strategies, proprietary administrative programs and/or software in regard to the recruitment of life insurance policy owners and the retention of such policyowners as participants in the "Pooled Benefits Trust" or any similar arrangement governed under U.S. Patent #5,974,390; and in conjunction with the administration other potential  related business transactions between the parties (hereinafter the above to be referred to as the "Business Discussions").

WHEREAS, Recipient understands and acknowledges that such information disclosed by SAVE is confidential and proprietary information of SAVE.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, SAVE and Recipient acknowledge and agree as follows:

1.    **Recitals**
The above recitals are true and correct and are made a part of this Agreement.

2.    **Limited Purpose**
The parties hereto agree that this Agreement is for the purpose of protecting SAVE's confidential information only. No other rights or obligations between the parties arising out of the performance of this Agreement are to be implied by this Agreement.

3.    **Confidentiality**
(A)    Recipient agrees and covenants that all information, knowledge, data, or record(s), whether written or otherwise, of whatsoever kind or nature not generally available to the public, including but not limited to information relating to SAVE's operations, policies, practices or procedures; business

2

strategies and methods of doing business; personnel matters; financial information; product information; software programs and applications, business and operational plans; company contracts; client and/or customer names and related personal information; or other information or documents of a confidential nature relating to the ownership or operation of or concerning any officer(s), director(s), owner(s), shareholder(s), employee(s), agent(s), servant(s), representative(s), consultant(s) and/or agent(s) of SAVE which is acquired or is made available to Recipient (hereinafter referred to as "Confidential Information"), shall be regarded as strictly confidential and/or trade secrets of SAVE. Confidential Information will not include information that falls within one of the following exceptions:

1. was known to Recipient prior to receipt from SAVE (such knowledge to be conveyed to SAVE within 3 business days);

2. is, or has been, independently developed by Recipient without aid of information provided by SAVE hereunder;

3. was received by Recipient without restriction from a third party which, to the best of Recipient's knowledge, had the right to make such disclosure; or

4. is permitted to be disclosed to third parties or to be used by Recipient or third parties pursuant to prior written authorization given by SAVE.

(B)    Recipient agrees that it will not at any time reveal, communicate, or divulge any Confidential Information to any person(s), or corporation(s), or other entity(ies) without the prior written consent of SAVE, except as may be required by law or legal process or requested by a regulatory agency to whose jurisdiction Recipient is subject (in which cases Recipient will, to the extent permitted by law, promptly notify SAVE of such requirement or request so that SAVE may seek appropriate relief).

(C)    Recipient further agrees to limit the use of and access to Confidential Information to its employees, agents, representatives and consultants (collectively hereinafter referred to as "Representatives") whose use or access is necessary in the opinion of recipient, and shall notify each such Representative to whom disclosure is made that such disclosure is made in confidence and shall be kept in confidence. Further, Recipient will direct such Representatives to observe the terms of this Agreement.

(D)    SAVE acknowledges that Recipient is an active member of the life insurance space and has developed expertise in marketing, administration and has developed proprietary contacts and relationships. SAVE may be exposed to Recipient's ideas and/or contacts and will not circumvent Recipient should SAVE be desirous of utilizing Recipients strategies and/or contacts.

3

4.    **Return of Confidential Information**

    Recipient agrees that it will deliver all Confidential Information, and all copy(ies), duplicate(s) or reproduction(s) of whatsoever kind relating to Confidential Information which are in Recipient's possession or under its control to SAVE at any time upon SAVE's request, or, in the case of copies, notes, summaries and other material prepared by Recipient or its Representatives, destroy such material and confirm its destruction to SAVE in writing.

5. :    **Use of Confidential Information**

    Recipient shall use Confidential Information solely in connection with the Business Discussions. Recipient shall not use Confidential Information for any purpose other than the Business Discussions, including without limitation for Recipient's own advantage or benefit or for the advantage or benefit of any other individual, corporation or entity, and shall not sell, assign, lease, disseminate or otherwise dispose of Confidential Information or any part thereof to any other person except as permitted by this Agreement, nor shall Recipient assert any property interest in or any lien or other right against or to Confidential Information and hereby waives and releases any rights or future rights to do so.

6.    **Indemnity, Injunctive Relief and Attorney's Fees**

    Recipient agrees that it will be fully responsible for the actions of its employees with respect to the Confidential Information of SAVE. Recipient agrees to indemnify SAVE for any direct damages (including court costs, expenses and reasonable attorney's fees) suffered by SAVE as a result of a breach of this Agreement.

    Recipient recognizes that irreparable injury may result to SAVE in the event of a breach of the restrictive covenants contained in this Agreement on the part of Recipient and agrees that in the event of a breach or threat of breach by Recipient of any of the provisions of this Agreement, SAVE shall be entitled, in addition to other remedies and damages available (including attorneys' fees and court costs), to an injunction to restrain the violations thereof by Recipient and all persons acting for and/or with Recipient. This Agreement shall terminate three years from the date hereof.

7.    **Miscellaneous**

    This agreement is personal to the parties and cannot be assigned or transferred by either party. The obligations of each party under agreement shall not be terminated upon any attempted assignment. This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective legal representatives, directors, officers, shareholders, agents, servants and employees. The parties hereto are not, nor shall they become by virtue of this Agreement or any actions taken pursuant

4

thereto, joint venturers, partners, employed by one and the other, or agents of one and the other. This agreement contains the entire understanding of the parties in respect to the subject matter hereof and with respect to the matter contained herein and supersedes all prior agreements or understandings.

IN WITNESS WHEREOF, SAVE and Recipient have each caused its respective corporate name to be signed by its duly authorized officer effective on the date first written above.

SAVE

By: _____

Name: ALAN J. ROSS

Title: President

Date: 12/18/07

The Simon Law Firm

By: _____

Name: David B. Simon

Title: Owner

Date: 12/18/07

# EXHIBIT B

<u>Agreement for Purchase of Pooled Benefits Trust Patent No. 5,974,390</u>

This Agreement ("Agreement") between and among Newco, Inc. ("Newco"), on the one hand, and Alan Ross ("Ross") and SAVE Associates (Ross and SAVE Associates together, "SAVE") (Newco, Ross and SAVE Associates collectively, the "Parties"), is made as of April 11, 2008.

WHEREAS, Newco intends to purchase all right, title and interest held by SAVE in Patent No. 5,974,390 for the establishment of trusts for various entity-owned life insurance (the "'390 Patent");

**NOW THEREFORE, FOR THE MUTUAL CONSIDERATION SET FORTH HEREIN, IT IS HEREBY AGREED THAT**

1.      Newco will pay SAVE $75,000 by April 10, 2008. In return, SAVE shall assign to Newco all ownership and rights to the '390 Patent held by Ross and SAVE Associates, and any of their affiliates, parents and assigns.

2.      Ross shall have the right to purchase the '390 Patent from Newco if and only if neither Newco nor any other person, entity or joint venture holding an interest in the '390 Patent, succeeds in establishing a trust and ensuring the enrollment of sufficient participants for the proper functioning of such trust within forty-eight (48) months of the effective date of this Agreement. The purchase price shall be $250,000 plus 12% interest beginning October 1, 2008.

3.      This Agreement shall be governed under the laws of the State of Illinois. The Parties consent to the jurisdiction of the state or federal courts of Illinois for the resolution of any and all disputes hereunder and agree to all legal, equitable and injunctive relief to enforce the rights and obligations under this Agreement. The Parties agree not to contest venue within either the City of Chicago.

4.      The Parties agree and acknowledge that the terms of this Agreement have been mutually negotiated between the Parties, and any rule of construction to construe ambiguous terms against the drafter is inapplicable.

5.      The Parties acknowledge that their respective rights and obligations are intended to be included in future documents to be executed by the Parties, including, without limitation, the any documents necessary to effectuate the assignment and recordation of assignment of the '390 Patent with the United States Patent and Trademark Office. The Parties therefore agree to cooperate in good faith to execute any and all necessary documents to effectuate the terms of this Agreement.

6.      Ross and SAVE Associates warrant that other than Ross and SAVE Associates, no other entity other than an affiliated entity of AXA Group, as successor in interest to the Mutual Life Insurance Company of New York, hold any title, right or interest in the '390 Patent.

7.     This Agreement may be signed in counterparts and exchanged by facsimile, with each copy having the validity as an original whole.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the first date set forth below.

ALAN ROSS

_____

Date:

NEWCO

By:_____
        David Simon
Its:
Date:

SAVE Associates

By:_____
        Alan Ross
Its:
Date:

2

# EXHIBIT C

<u>Agreement Regarding Pooled Benefits Trusts</u>

   This Agreement ("Agreement") between and among STP Enterprises, Inc. ("STP") and Alan Ross ("Ross") (collectively, the "Parties"), is made as of April 11, 2008.

   WHEREAS, STP intends to form an entity ("PBTCo") with several of its partners, including, without limitation, an operating entity affiliated with Corridor Capital Group Holdings LLC ("Corridor") to pursue the establishment of pooled benefits trusts for various entity-owned life insurance, including, without limitation, bank-owned, company-owned, government-owned , non-profit-owned or insurance carrier-owned life insurance pursuant to Patent No. 5,974,390 (the "'390 Patent"), and all resulting corporate opportunities reasonably arising from such activities (the "Business"); and

   WHEREAS, the Parties intend for PBTCo to be a beneficiary of this Agreement at such time that PBTCo is formed; and

   WHEREAS, STP or PBTCo, when formed, intends to purchase all right, title and interest in the '390 Patent from one of its current owners and assignees, an affiliated company of the AXA Group, as successor in interest to the Mutual Life Insurance Company of New York ("AXA");

   **NOW THEREFORE, FOR THE MUTUAL CONSIDERATION SET FORTH HEREIN, IT IS HEREBY AGREED THAT**

   1. STP, or PBTCo when formed, shall pay Ross $10,000 per month for 17 months beginning June 1, 2008.

   2. Ross shall provide consulting and marketing services to STP and PBTCo when formed.  Ross agrees that he shall not engage in any activities competitive with the Business during such time that he receives any payment pursuant to this Agreement and for a period of three (3) years after receipt of the last payment hereunder, except as specifically allowed herein.

   3. STP or PBTCo, when formed, shall pay Ross 10% of the net profits of the Business (the "Net Sharing Percentage").  Ross shall also be entitled to 10% of the proceeds of the sale of PBTCo.

   4. STP or PBTCo, when formed, shall pay Ross a percentage (the "Ross Sharing Percentage") in the amount of 80% of the net profits solely related to enrollment, renewal and administration fees generated by policies obtained or otherwise enrolled by Ross in one or more pooled benefits trusts (the "Trusts") to be established by STP or PBTCo, as appropriate, pursuant to the '390 Patent (such net profits undiminished by the Ross Sharing Percentage, the "Ross Generated Profits").  In applying the Ross Sharing Percentage to the Ross Generated Profits to determine any payments to be made to Ross, the amount of any payments made under the Net Sharing Percentage as set forth in Paragraph 3 attributable to Ross Generated Profits shall be excluded to avoid double-counting.  For the purposes of clarity, the Ross Generated Profits exclude all profits not

directly obtained from enrollment, renewal and administration fees charged to participants in the Trust. Such excluded profits include, without limitation, profits arising from the capture of enhanced yield of enrolled policies, the procurement of replacement insurance for matured policies, and the purchase of policies by STP, PBT or their affiliates from participants in the Trust, including, without limitation, policies for insured lives over 70 years old.

5.    Upon the aggregate payment of $150,000 in expenses or other capital expenditures by the investors in PBTCo for the development of the Business, the Ross Sharing Percentage shall be decreased to 75% for all Ross Generated Profits obtained from that point forward. The Ross Sharing Percentage shall decrease 5% for every additional $250,000 in expenses or other capital contributions made by the investors in PBTCo to develop the Business, provided that the Ross Sharing Percentage shall never fall below the 10% Net Sharing Percentage set forth in Paragraph 3.

6.    STP or PBTCo, when formed, shall grant Ross a non-exclusive license to enroll policies into the Trust, provided that all documents, marketing materials and other information provided by Ross to any customer or potential customer must first be approved by STP or PBTCo, when formed. Ross agrees not to approach or otherwise solicit any customers without the prior written approval of STP or PBTCo, when formed.

7.    Once the sum of all payments to Ross under this Agreement equals or exceeds $10,000,000.00, the Ross Sharing Percentage shall fall to zero percent (0%). After that point, Ross's total compensation shall be solely from the Net Sharing Percentage described in Paragraph 3.

8.    This Agreement shall be governed under the laws of the State of New York. The Parties consent to the jurisdiction of the state or federal courts of both New York and Illinois for the resolution of any and all disputes hereunder and agree to all legal, equitable and injunctive relief to enforce the rights and obligations under this Agreement. The Parties agree not to contest venue within either the City of New York or the City of Chicago.

9.    The Parties agree and acknowledge that the terms of this Agreement have been mutually negotiated between the Parties, and any rule of construction to construe ambiguous terms against the drafter is inapplicable.

10.    The Parties acknowledge that their respective rights and obligations are intended to be included in future documents to be executed by the Parties, including, without limitation, marketing, brokerage, service and other agreements in connection with the Business, and any necessary agreements with PBTCo once that company is formed. The Parties therefore agree to cooperate in good faith to execute any and all necessary documents to effectuate the terms of this Agreement.

11.    This Agreement may be signed in counterparts and exchanged by facsimile, with each copy having the validity as an original whole.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as

of the first date set forth below.

ALAN ROSS

_____

Date:

STP ENTERPRISES, INC.

By:_____
          David Simon
Its:
Date:

# EXHIBIT D

## ASSIGNMENT AGREEMENT

This Assignment is entered into effective as of May 1, 2008 by and among STP Enterprises, Inc. ("STP") and Newco, Inc. ("Newco") (collectively, the "Assignors") and Balshe LLC, a Delaware limited liability company (the "Assignee").

FOR VALUE RECEIVED, INCLUDING $10.00 AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, Assignors hereby assign, convey, quitclaim and transfer to Assignee all right, title, claim and interest of any kind whatever that Assignors have or may have in or with respect to any and all claims or causes of action, including, without limitation, claims for misappropriation of trade secrets, breach of contract, breach of fiduciary duty, fraud, unjust enrichment and promissory estoppel arising from or relating to any acts or omissions by Alan Ross and SAVE Associates (collectively, "Ross"), arising out of or related to that certain Agreement for Purchase of Pooled Benefits Trust Patent No. 5,974,390 between Assignors and Ross (the "Purchase Agreement") and/or that certain Agreement Regarding Pooled Benefits Trusts between Assignors and Ross (the "Consulting Agreement"), and any of the Assignors' dealings with Ross in connection with the Purchase Agreement, the Consulting Agreement or the '390 Patent (such claims or causes of action being, collectively, the "Assigned Claims").

Assignors represent and warrant that, collectively, they own the Assigned Claims, and each of them represents and warrants that he or it has not assigned, conveyed, quitclaimed or transferred, in whole or in part, the Assigned Claims, nor created or incurred any lien, encumbrance, or security interest with respect thereto.

Executed and delivered at Chicago, Illinois as of the above date.

STP Enterprises, Inc.

By: _____
Name: _David B. Simon_____
Its: _V.P._____

Newco, Inc.

By: _____
Name: _David B. Simon_____
Its: _Organizer_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | |
| | ) | U.S. District Court for the Northern |
| Plaintiffs, | ) | District of Illinois No. |
| | ) | |
| vs. | ) | Case No.:  08 CH 19160 |
| | ) | |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | 08 CV 3256 |
| | ) | JUDGE ZAGEL |
| Defendants. | ) | MAGISTRATE JUDGE COX |

**EXHIBIT "B" TO NOTICE OF REMOVAL**

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS         (Rev.1/2/01) CCG0001 |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

BALSHE LLC and THE SIMON LAW FIRM,        )
                                               )

        Plaintiffs,        )        **08CH 19160**

    v.        )        Case No. _____

ALAN J. ROSS and SAVE ASSOCIATES,        )        **Please serve:**
                 .        )        Alan J. Ross
                                    )        687 Highland Avenue
        Defendants.        )        Needham, MA 02494

### SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to Plaintiffs' Verified Complaint for Injunctive and Other Relief in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room 801, Chicago, Illinois 60602

| | | |
|---|---|---|
| ☐ District 2-Skokie | ☐ District 3 - Rolling Meadows | ☐ District 4 - Maywood |
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ☐ District 5 - Bridgeview | ☐ District 6-Markham | |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | |
| Bridgeview, IL 60455 | Markham, IL 60426 | |

You must file within 30 days after service of this summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE VERIFIED COMPLAINT.

To the officer:

      This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

| | |
|---|---|
| Atty. No.: 91731 | WITNESS, _____ **MAY 28 2008** |
| Name: NOVACK AND MACEY LLP (PAF/RLM/RGD) | |
| Atty. for: Plaintiff | _____ |
| Address: 100 North Riverside Plaza | Clerk of Court |
| City/State/Zip: Chicago, IL 60606 | Date of Service: _____, _____ |
| Telephone: (312) 419-6900 | (To be inserted by officer on copy left with defendant or other person) |

_____
(Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN. CLERK OF THE CIRCUIT COURT OF COOK COUNTY. ILLINOIS**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | |
| | ) | U.S. District Court for the Northern |
| Plaintiffs, | ) | District of Illinois No. |
| | ) | |
| vs. | ) | Case No.:  08 CH 19160 |
| | ) | |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | 08 CV 3256 |
| Defendants. | ) | JUDGE ZAGEL |
| | | MAGISTRATE JUDGE COX |

**EXHIBIT "C" TO NOTICE OF REMOVAL**

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS | (Rev.1/2/01) CCG0001 |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

BALSHE LLC and THE SIMON LAW FIRM,   )
            )
      Plaintiffs,   )
            )
    v.        )    **08CH19160**
            )   Case No. _____
ALAN J. ROSS and SAVE ASSOCIATES,   )
            )   **Please serve:**
            )
            )   SAVE Associates
            )   678 Highland Avenue
      Defendants.   )   Needham, MA 02494

### SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to Plaintiffs' Verified Complaint for Injunctive and Other Relief in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room 801, Chicago, Illinois 60602

| | | |
|---|---|---|
| ☐ District 2-Skokie | ☐ District 3 - Rolling Meadows | ☐ District 4 - Maywood |
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ☐ District 5 - Bridgeview | ☐ District 6-Markham | |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | |
| Bridgeview, IL 60455 | Markham, IL 60426 | |

You must file within 30 days after service of this summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE VERIFIED COMPLAINT.

To the officer:

     This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

Atty. No.: 91731
Name: NOVACK AND MACEY LLP (PAF/RLM/RGD)
Atty. for: Plaintiff
Address: 100 North Riverside Plaza
City/State/Zip: Chicago, IL  60606
Telephone:  (312) 419-6900

WITNESS,   **MAY 28 2008**

        DOROTHY BROWN
        Clerk of Court
Date of Service: _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN. CLERK OF THE CIRCUIT COURT OF COOK COUNTY. ILLINOIS**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | |
| | ) | U.S. District Court for the Northern |
| Plaintiffs, | ) | District of Illinois No. |
| | ) | |
| vs. | ) | Case No.: 08 CH 19160 |
| | ) | |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | 08 CV 3256 |
| Defendants. | ) | JUDGE ZAGEL |
| | ) | MAGISTRATE JUDGE COX |

**EXHIBIT "D" TO NOTICE OF REMOVAL**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08 CH 19160 |
| | ) | |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | Honorable Kathleen M. Pantle |
| | ) | |
| Defendants. | ) | |

## TEMPORARY RESTRAINING ORDER

This matter coming to be heard on the Emergency Motion For Temporary Restraining Order And Preliminary Injunction (the "Motion") filed by Plaintiffs Balshe LLC ("Balshe") and The Simon Law Firm (the "Simon Firm") (collectively, the "Plaintiffs") to enjoin Defendants Alan J. Ross ("Ross") and SAVE Associates ("SAVE") (collectively, the "Defendants") from: (i) disseminating any information disclosed by Balshe and/or the Simon Firm pursuant to the Non-Disclosure Agreement; and (ii) transferring any interest in United States Patent No. 5,974,390 (the "'390 Patent"); due notice having been given, ~~counsel for~~ _____ ~~having appeared~~, the Court having reviewed Plaintiffs': (a) Verified Complaint For Injunctive And Other Relief; (b) Emergency Motion For Temporary Restraining Order And Preliminary Injunction (the "Emergency Motion"); and (c) Memorandum In Support Of Emergency Motion For Temporary Restraining Order And Preliminary Injunction; and the Court having heard argument and being otherwise fully advised in the premises,

THE COURT FINDS THAT:

1. Plaintiffs possess clearly ascertainable rights in need of protection in the form of: (a) their contractual rights to the '390 Patent, as set forth and described in the '390 Patent Purchase Agreement; (b) their contractual rights to not have the confidential and secret business plan they disclosed to Defendants (the "New Business Plan")

disseminated to any third parties, as set forth and described in the Non-Disclosure Agreement; and (c) their statutory rights under the Illinois Trade Secrets Act (the "Act") not to have their trade secrets, including, without limitation, the New Business Plan, misappropriated by Defendants.

2. Defendants' threatened disclosure of the New Business Plan, which constitutes a trade secret pursuant to the Act, would constitute misappropriation under the Act;

3. Plaintiffs' rights are in need of protection from Defendants as Defendants have the means, ability and motive to transfer the '390 Patent and disclose Plaintiffs New Business Plan;

4. Plaintiffs will suffer irreparable harm if a Temporary Restraining Order ("TRO") is not issued to protect their interests because, if the '390 Patent is transferred, it may be difficult or impossible to obtain its return and, if the New Business Plan is disclosed, it will seriously impair its value and there may be no way to prevent third parties from using the information and/or disseminating it to others;

5. Plaintiffs have no adequate remedy at law because:  (i) the value of the '390 Patent and the New Business Plan cannot be determined; and (ii) Defendants do not have sufficient assets to satisfy a damage award;

6. Plaintiffs are likely to succeed on the merits as they have written agreements and sworn allegations demonstrating the validity of their claims;

7. The harm to Plaintiffs if a TRO is not granted outweighs any harm to the Defendants from the granting of such an order as, in the absence of a TRO, it may not be possible to make Plaintiffs whole if the '390 Patent is transferred and/or the New Business Plan is disseminated prior to the holding of a preliminary injunction hearing; but the harm to Defendants will be minimal if they are prevented from transferring the '390 Patent and disseminating the New Business Plan for a minimal amount of time until a preliminary injunction hearing is promptly held;

8. Pursuant to Section 3 of the Act, Plaintiffs are entitled to the injunctive relief requested in the Emergency Motion to prevent Defendants' actual or threatened misappropriation of Plaintiffs' trade secrets; and

9. The requested TRO will maintain the *status quo ante* as it will prevent the transfer of the '390 Patent to one or more other parties and prevent the dissemination of Plaintiffs' confidential and secret New Business Plan until the Court has an opportunity to hold a preliminary injunction hearing on this matter.

THE COURT HEREBY ORDERS THAT:

A.    Ross and SAVE are temporarily restrained and enjoined from in any manner transferring, pledging, disposing of or otherwise encumbering any interest in United States Patent No. 5,974,390;

B.    Ross and SAVE are temporarily restrained and enjoined from disseminating in any manner any information disclosed by Balshe and/or the Simon Firm pursuant to the Non-Disclosure Agreement including, without limitation, the New Business Plan; and

C.    This matter is set for hearing with respect to the portion of Plaintiffs' Motion requesting a preliminary injunction on _Jun e 12th & June 13th_, 2008 at _1:30_ a.m./p.m.

ENTERED:

By:_____

Dated:_____

ENTERED
JUDGE KATHLEEN M. PANTLE - 1775
MAY 2 8 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

*Prepared by:*
P. Andrew Fleming
Richard L. Miller II
Richard G. Douglass
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Firm ID. 91731
#221127

Page 3 of 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

BALSHE LLC and THE SIMON LAW FIRM )
                                    )        U.S. District Court for the Northern
        Plaintiffs,                 )        District of Illinois No.
                                    )
vs.                                 )        Case No.:  08 CH 19160
                                    )
ALAN J. ROSS and SAVE ASSOCIATES,   )
                                    )        08 CV 3256
        Defendants.                 )        JUDGE ZAGEL
                                    )        MAGISTRATE JUDGE COX


## EXHIBIT "E" TO NOTICE OF REMOVAL

Order                                    CCG N002-300M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

BALSHE, LLC, et al

                    v.                                 No. 08 CH 19160

Alan J Ross, et al.

### ORDER

This cause coming to be heard on Plaintiffs' Motion for Expedited Discovery, due notice having been given, and the court being duly advised in the premises;

IT IS HEREBY ORDERED THAT:

(1) The motion is granted;

(2) The parties shall respond to interrogatories and requests for production within Seven (7) days from notice thereof;

(3) The parties shall appear for deposition within ten (10) days of notice thereof.

Atty. No.: 91731

Name: Novack and Macey LLP (R.O.)          ENTERED:

Atty. for: Plaintiffs

Address: 100 N. Riverside Plaza          Dated:

City/State/Zip: Chicago, IL 60606

Telephone: (312) 419-6900                Judge          Judge's No.

ENTERED
JUDGE KATHLEEN M. PANTLE-1775
MAY 28 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**