**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | Case No.: 08 CV 3256 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge James B. Zagel |
| | ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION
TO EXTEND TEMPORARY RESTRAINING ORDER**

Plaintiffs filed this action, which arises under the patent laws of the United States, in the Circuit Court of Cook County, which lacked subject matter jurisdiction over the action. That Court issued an *ex parte* "temporary restraining order" (the "TRO") which was void when issued. After defendants removed the action to this Court, plaintiffs waited in silence for the TRO to expire, and then filed the instant motion to "extend" the void, expired TRO. Plaintiffs assert– contrary to state and federal law–that the TRO is of unlimited, potentially perpetual, duration.

The express terms of Rule 65(b)(2) prohibit the relief that plaintiffs now seek. Specifically, that Rule provides that a TRO may be extended by the Court only *before* it expires. Plaintiffs' Motion therefore comes too late, and must be denied. Moreover, that Rule provides that a TRO may not be extended absent "good cause." Plaintiffs do not argue, much less establish, such "good cause." In fact, there is no "good cause" for the extension of the void, expired TRO, because plaintiffs have not demonstrated (and cannot demonstrate) any likelihood of success on the merits of their claims or any likelihood of irreparable harm, and because the balance of equities substantially favors defendants. For all of these reasons, plaintiffs' Motion must be denied.

# FACTUAL BACKGROUND[1]

Defendants Alan J. Ross ("Mr. Ross") and his sole proprietorship, SAVE Associates ("SAVE"), own a one-half interest in a valuable patent (the "Patent") that was invented by Mr. Ross. Plaintiffs suggest that, properly exploited, the Patent may be worth more than $1 billion. Complaint, ¶16. Seeking to exploit the Patent, Mr. Ross engaged in discussions with a number of potential business partners–including David Simon, the principal of the two plaintiffs herein– concerning the possibility of forming a venture to exploit the Patent.

In connection with his discussions with Mr. Simon, Mr. Ross demanded that Mr. Simon sign a non-disclosure agreement (the "NDA"), which, by its express terms, was entered "for the purpose of protecting [defendants'] confidential information *only*." *See* NDA (Ex. A to the Complaint), ¶2. At Mr. Simon's insistence, a paragraph was added to the NDA setting forth Mr. Ross's agreement that he would not "circumvent" Mr. Simon or his law firm, plaintiff The Simon Law Firm. *Id.*, ¶3(C). This "non-circumvention agreement," by its express terms, places no restrictions of any kind on Mr. Ross's ability to disclose information received by him from Mr. Simon or The Simon Firm. Mr. Ross denies plaintiffs' allegations that he has "circumvented" plaintiffs in violation of the NDA, and that he has disclosed to any third persons any non-public information provided to him by plaintiffs.

Mr. Ross and Mr. Simon exchanged multiple drafts of a number of agreements that would be necessary to the formation of a business relationship between them, but never finalized the material business terms. No party to this litigation, or any affiliated entity, ever executed the draft agreements. Throughout these negotiations, Mr. Ross repeatedly reminded Mr. Simon that no agreement would be final unless and until it was approved by Mr. Ross's attorneys and signed by Mr. Ross.

On May 22, 2008, Mr. Ross learned that The Simon Firm had breached the NDA by making certain of Mr. Ross's confidential information available to unaffiliated third parties. *See* E-mail from Alan Ross to David Simon, dated May 23, 2008, Exhibit " A." The following day– May 23–he asked Mr. Simon whether Mr. Simon had made such confidential information

---

[1] Attached hereto as Exhibit "G" is the Affidavit of Defendant Alan J. Ross attesting to the accuracy of the Factual Background of this Memorandum.

available to potential customers of the venture that the parties proposed to form. *Id.* By reply e-mail, Mr. Simon denied having done so. *Id.* Mr. Ross then asked Mr. Simon whether he had made such confidential information available to any financial institutions or other third parties–which also would violate the NDA. *Id.* Mr. Simon never replied.

Instead, that same day–May 23, 2008–Mr. Simon formed a new limited liability company, defendant Balshe LLC ("Balshe"), of which he is apparently the sole member. *See* Certificate of Formation of Balshe LLC, dated May 23, 2008, 4:36 p.m., Exhibit "B." Two other entities controlled by Mr. Simon–STP Enterprises, Inc. (an entity whose corporate status is "VOID"[2]) and "Newco, Inc." (an entity which may or may not exist)–then purported to assign to Balshe the various causes of action asserted by plaintiffs in this action. *See* Exhibit D to Complaint.[3] The ink not yet dry on Balshe's certificate of formation, Mr. Simon then retained the Novak and Macey law firm to bring this action on behalf of Balshe and The Simon Firm. *See* Press Release issued by Plaintiffs' Counsel, Exhibit " D" ("On May 23, 2008, the firm was engaged to represent clients with an interest in an immensely valuable patent . . .").

Plaintiffs knew prior to the filing of the state court complaint that defendants were represented by Stanley A. Twarog, Esq., a Boston attorney. Nevertheless, plaintiffs gave Mr. Twarog inadequate notice and obtained a TRO in the state court. After defendants removed to this Court, Plaintiffs filed the instant Motion.

---

[2] *See* Printout from Delaware Secretary of State, Exhibit "C."

[3] Remarkably, the "Assignment Agreement" attached to plaintiffs' Complaint as Exhibit D, purporting to assign to Balshe LLC certain claims against defendants herein, is dated as of May 1, 2008–more than three weeks before purported assignee Balshe LLC was formed, more than ten years after purported assignor S.T.P. Enterprises, Inc. had its corporate charter voided by the State of Delaware, and *more than two weeks before plaintiffs became aware of the existence of their purported causes of action*. *See* Complaint, ¶45 (alleging that Mr. Simon first became aware of Mr. Ross's alleged misdeeds on May 16, 2008). These discrepancies go unexplained in plaintiffs' filings.

6328864v1 999999

## ARGUMENT

I.     THE TRO WAS VOID WHEN ISSUED BECAUSE THE STATE COURT DID NOT HAVE SUBJECT MATTER JURISDICTION OVER THIS ACTION, WHICH ARISES UNDER THE PATENT LAWS OF THE UNITED STATES.

Plaintiffs assert in their Complaint claims for "Injunctive Relief to Prevent Transfer of the '390 Patent" (Count III), for specific performance of a purported "'390 Patent Purchase Agreement" (Count IV), and for breach of such "Agreement" (Count IX).  In support of their claims, plaintiffs proffer an unsigned "agreement" alleging that Mr. Ross assigned his billion-dollar patent to plaintiffs in consideration of a one-time payment of $75,000.  *See* purported "'390 Patent Purchase Agreement," attached to Complaint as Ex. B; *see also* Complaint, ¶30 ("In April 2008, the parties agreed that Balshe would purchase the '390 Patent from Defendants for $75,000.00, pursuant to . . . the "390 Patent Purchase Agreement"); *id.*, ¶16 (alleging that exploitation of the '390 Patent "would generate <u>over</u> a <u>billion</u> <u>dollars</u> in revenue within ten years" (emphasis in original)).  On the basis of these allegations, plaintiffs allege that the purported "'390 Patent Purchase Agreement is valid, binding, and enforceable."  Complaint, ¶80; *see also id*, ¶115 (same).

Pursuant to 35 U.S.C. § 261, ownership of "patents, or any interest therein, shall be assignable in law by an instrument *in writing*" (emphasis added).  Counts III, IV, and IX of plaintiffs' Complaint–each of which is premised on the allegation that the unsigned "Patent Purchase Agreement" is valid, binding, and enforceable–thus arise under § 261 of the Patent Act.[4]

---

[4]   *See, e.g., Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 33 (1923) (rejecting challenge to District Court's subject-matter jurisdiction because complaint "involves the validity of the assignment of a patent, which is a question arising under the patent laws because it depends upon their construction"); *Kennedy v. Wright*, 851 F.2d 963, 968 (7th Cir. 1988) (same); *see also Calgon Corp. v. Nalco Chem Co.*, 726 F.Supp. 983, 988 (D.Del. 1989) ("The present patent jurisdiction statute, 28 U.S.C. § 1338, . . . contains similar language to that in effect during the 1920's and cited by Chief Justice Taft in *Crown Die*").

6328864v1 999999

Because this is an action arising under the Patent Act, the District Courts have *exclusive* jurisdiction over plaintiffs' claims.[5]  Thus, as a matter of federal law, the state court which purported to issue a temporary restraining order against defendants was without jurisdiction to do so.  And a temporary restraining order issued by an Illinois court that lacked subject-matter jurisdiction over the action is void *ab initio*.[6]

To the extent that Counts III, IV and IX of plaintiffs' Complaint state any claims upon which relief may be granted, such claims arise under the Patent Act.  As a matter of federal law, a state court lacks jurisdiction to hear such claims.  Because the state court had no jurisdiction, its issuance of the temporary restraining order was *ultra vires*, and the TRO itself is void and is not subject to "extension."  Plaintiffs' Motion must therefore be denied.[7]

---

[5]  *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . .  Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases").

[6]  *See, e.g., Diaz v. Provena Hosps.*, 817 N.E.2d 206, 213 (Ill. App. Ct. 2004) (denying contempt motion for violation of TRO that was issued without jurisdiction; "An order or judgment is void if the court lacked personal or subject matter jurisdiction or otherwise lacked the power to decide the particular matter presented to it. . . . [E]very act of the court beyond its jurisdiction is void"); *Miller v. Balfour*, 707 N.E.2d 759, 764-65 (Ill. App. Ct. 1999) ("a void judgment, order, or decree may be attacked at any time or in any court, either directly or collaterally, without any showing of diligence or a meritorious defense. . . . A void . . . order is one that is entered by a court lacking jurisdiction over the parties or the subject matter, or lacking the inherent power to enter the particular order or judgment, or where the order was procured by fraud."); *Jenner v. Wissore*, 517 N.E.2d 1220, 1224 (Ill. App. Ct. 1988) ("a judgment of contempt cannot be sustained on review if the order which is claimed to have been violated is void. . . . Such a situation arises where the court lacked personal or subject matter jurisdiction or was otherwise without power to decide the particular matter presented to it").

[7]  Because this Court's jurisdiction over the removed action is derivative of the state court's (non-existent) jurisdiction, defendants respectfully suggest that this Court must dismiss the action (and not remand it to the state court) for lack of subject-matter jurisdiction.  *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 449 (1974) ("After removal, the federal court takes the case up where the State court left it off" (citations omitted)); *Leesona Corp. v. Concordia Mfg. Co.*, 312 F.Supp. 392, 395-96 (D.R.I. 1970) (dismissing patent case removed from state court because "removal jurisdiction is derivative in nature, and, as the original state court lacked jurisdiction, so too does the federal court. . . . [T]his yields the paradoxical result . . . that the federal court must dismiss, even though, had the action been filed anew rather than removed, jurisdiction would have been sound."); *Rossi Sheet Metal Works v. Am. Employers Ins. Co.*, 439 F.Supp. 895, 897 (D.R.I. 1977) (same).

II.    EVEN IF THE TRO HAD NOT BEEN VOID, IT HAS NOW EXPIRED AND IS NOT
SUBJECT TO "EXTENSION" UNDER RULE 65(b).

Plaintiffs argue that, because the TRO contains no expiration date on its face, it "remains in full force and effect until it is dissolved or modified by this Court." Pl. Mem., ¶1 (*quoting* 28 U.S.C. § 1450). Their argument, in essence, is that the TRO's duration is unlimited – *perpetual* – unless and until the TRO is modified by this Court, simply because the action was removed to this Court pursuant to 28 U.S.C. § 1441 *et seq.*

The Supreme Court of the United States has expressly rejected this argument, finding:

> no basis for [the] argument that § 1450 was intended to turn *ex parte* state court temporary restraining orders of limited duration into federal court injunctions of unlimited duration. Section 1450 was simply designed to deal with the unique problem of a shift in jurisdiction in the middle of a case which arises whenever cases are removed from state to federal court. . . .
>
> An *ex parte* temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65 (b), measured from the date of removal.[8]

The TRO issued by the Circuit Court of Cook County was governed by 735 ILCS 5/11-101, a statute which is identical in most respects to the provisions of Fed.R.Civ.P. 65 governing temporary restraining orders. As relevant, § 5/11-101 provides that "[e]very temporary restraining order granted without notice . . . shall expire by its terms within such time after the signing of the order, *not to exceed 10 days*, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period." (Emphasis added.[9])

---

[8] *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 435-40 (1974).

[9] Plaintiffs assert that the TRO is of unlimited duration because "it was entered with notice." Pl. Mem., ¶1. But plaintiffs' "notice" to defendants, emailed and faxed to defendants' Boston counsel after business hours the night before the TRO was entered, provided Mr. Ross with no reasonable opportunity to appear in the State Court to oppose entry of the TRO. *See* Exhibit "E," Affidavit of Stanley Twarog, Esq., submitted herewith.

The ten-day period in which the TRO may have been in effect is measured by reference to 5 ILCS 70/1.11, which provides that all time periods are to be measured in calendar days, "excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday . . ."  The TRO was entered on May 28, 2008 and has never been extended.  Counting from the 29th, the tenth day was Saturday, June 7.  The next business day after June 7 was Monday, June 9.  Pursuant to § 5/11-101 and § 70/1.11, *supra*, the TRO would have expired not later than that day.  Pursuant to the rule set forth in *Granny Goose*–that a TRO "remains in force after removal no longer than it would have remained in effect under state law"– the TRO expired not later than Monday, June 9, 2008—the day before plaintiffs filed the instant Motion.

Under both Rule 65 and § 5/11-101, a TRO can be extended once, upon a showing of "good cause," for ten days.  But both the State and Federal Rules expressly provide that any such extension may only be ordered by the Court *before* the initial ten-day TRO expires.[10]  Plaintiffs' Motion to Extend the TRO is therefore untimely, and must be denied.

III.   EVEN IF THE TRO WAS CAPABLE OF BEING EXTENDED, PLAINTIFFS CANNOT DEMONSTRATE "GOOD CAUSE" FOR AN EXTENSION.

Under both Rule 65(b) and § 5/11-101, a party requesting the extension of a TRO must demonstrate "good cause" therefor.  Plaintiffs' Motion fails *in toto* to set forth any good cause for extension of the TRO.  As set forth below, and as will be set forth in greater detail in defendants' opposition to plaintiffs' motion for a preliminary injunction, plaintiffs' filings demonstrate conclusively that plaintiffs have no likelihood of success on the merits, no risk of irreparable injury, and that the balance of equities substantially favors defendants.

Plaintiffs' filings in this action demonstrate that they have no protectable trade secrets and that the purported "Agreements" on which they rely are unsigned *drafts*–and, in fact, are not

---

[10]   *See* Fed.R.Civ.P. 65(b)(2) ("The order expires at the time after entry–not to exceed 10 days–that the court sets, unless *before that time* the court, for good cause, extends it for a like period . . ." (emphasis added)); 735 ILCS 5/11-101 ("Every temporary restraining order granted without notice . . . shall expire by its terms within such time after the signing of the order, not to exceed 10 days, as the court fixes, unless *within the time so fixed* the order, for good cause shown, is extended for a like period . . ." (emphasis added)); SEC v. Unifund Sal, 910 F.2d 1028, 1034-1035 (2d Cir. 1990) (defendant's argument that Court could not extend TRO after its expiration "appears to be correct"); 13-65 MOORE'S FEDERAL PRACTICE § 65.38 ("an order continuing a temporary restraining order must be issued within the 10-day limitation period of the original restraining order").

6328864v1 999999

even the *last* drafts exchanged by the parties.[11]   These unsigned drafts, together with correspondence between the parties, make plain that neither plaintiffs nor defendants intended to be bound by any *draft* Agreement prior to the finalization and execution thereof.   Plaintiffs accordingly have *no* reasonable likelihood of succeeding on the merits of *any* of their claims.[12]

A.    The "New Business Plan" is Not a Protectable Trade Secret.

Plaintiffs conclusorily assert that their purported New Business Plan "constitutes a 'Trade Secret,' as that term is defined in 765 ILCS § 1065/2(d)."   Complaint, ¶ 56.   But neither plaintiffs' Complaint, nor their Memorandum in Support of the TRO, nor their recently-filed Memorandum in Support of a Preliminary Injunction, sets forth the *legal standard* for determining whether a particular document or other information constitutes a protectable trade secret.   Under Illinois law[13], a "trade secret" is defined as particular information that:

> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to

---

[11]   Plaintiffs allege that the "Patent Purchase Agreement," attached to their Complaint as Ex. B, was finalized on April 13 or 14, 2008.   Complaint, ¶¶34-35.   But that "Agreement," which contains un-executed signature lines for David Simon and for defendants, and which expressly refers (in ¶7) to the necessity that it be" signed" in order to have "validity," was merely a draft, and does not evidence any meeting of the minds between Simon and defendants.   In fact, as plaintiffs failed to disclose to this Court or to the state court that entered the TRO, Mr. Simon *knew* that the "Agreement" was not final, as evidenced by the fact that he sent to Mr. Ross multiple later set of drafts on May 1 and May 5, 2008, reflecting changes negotiated the parties.   *See* E-mail from David Simon to Alan Ross, dated May 5, 2008, attached hereto as Exhibit "F."   In light of this May 5 e-mail, which purported to forward "Final Versions of the PBTCo/Newco/Ross Agreements," plaintiffs' assertion that "On or about April 14, 2008, Simon emailed for Ross's signature the final versions of the [Agreements]," Complaint ¶35, is nothing short of a fraud on this Court and on the state court.   Plaintiffs' request for extraordinary equitable relief must accordingly be denied for the additional reason that plaintiffs' hands are unclean.

[12]   Plaintiffs' sole arguments in support of their likelihood of success on the merits consist of the conclusory assertions that (1) that they "have undeniable proof in support of their claims," and (2) that they have "certainly" shown that they have a "'better than negligible' chance of prevailing."   Plaintiffs' Mem. in Support of PI (Dkt. #13), at 7.

[13]   Given defendants' Massachusetts citizenship, it is not clear that Illinois law, as opposed to that of some other jurisdiction, governs plaintiffs' claims.   Due to the expedited nature of these proceedings, and reserving the right to assert at a later time that the law of some other jurisdiction applies, defendants will assume for present purposes that plaintiffs' trade secret claims are governed by Illinois law.

8

maintain its secrecy or confidentiality.[14]

Nothing in plaintiffs' submissions supports (or even addresses) the first of these elements. While plaintiffs claim that their "New Business Plan" has "enormous value," and assert conclusorily that they took "great precautions against [its] disclosure" (Complaint, ¶17), they do not allege *anywhere* in their Complaint, nor in their Motions, that the Plan derives its value "from not being generally known to other persons." Plaintiffs' failure to plead (much less establish a likelihood of success on the merits of) a necessary element of their trade secret claims is fatal to their application for preliminary relief.[15]

Moreover, plaintiffs' Complaint establishes conclusively that their purported "trade secret" has not been the subject of reasonable efforts to maintain its secrecy. In this regard, plaintiffs allege only (1) that the elements of the "New Business Plan" were known only to plaintiffs and "a few of the key members of [their] investment group and third parties *who had entered appropriate confidentiality agreements*" (Complaint, ¶17 (emphasis added)), and (2) that they disclosed the "Plan" to defendants *without any confidentiality agreement. Id.*, ¶22.

Plaintiffs argue that the Non-Disclosure Agreement ("NDA") attached to their Complaint as Exhibit A "required that Defendants agree to maintain the New Business Plan and all information related thereto as confidential" and "protect[s] the New Business Plan from any disclosure except through [plaintiffs]." Complaint, ¶19. But the NDA, by its plain language, imposes no such obligation of confidentiality on either defendant.

As plaintiffs admit, the NDA was principally drafted by defendants for the purpose of protecting *defendants'* confidential information. Paragraph 2 of the NDA makes this plain:

> **2.    Limited Purpose**
>
> The parties hereto agree that this Agreement is for the purpose of protecting SAVE's[16] confidential information only. No other rights or obligations between the parties arising out of the performance of

---

[14]  765 Ill. Comp. Stat. 1065/2(d).

[15]  *See, e.g., David White Instruments v. Tlz, Inc.*, 2003 U.S. Dist. LEXIS 331, *13 (N.D.Ill. 2003) ("real value of trade secret lies in the fact that it is not generally known to others who could benefit from using it" (*quoting Service Ctrs. of Chicago, Inc. v. Minogue*, 535 N.E.2d 1132, 1136 (Ill. App. Ct. 1989)).

[16]  "SAVE" is defined in the NDA as including defendants Alan J. Ross and SAVE Associates. NDA at 1.

6328864v1 999999

this Agreement are to be implied by this Agreement.

Plaintiffs' argument that the NDA protects the confidentiality of ***plaintiffs'*** information is simply contradicted by the express terms of ¶2 of the NDA.

Plaintiffs admit (Complaint, ¶19), however, that defendants agreed to insert into the NDA a paragraph (¶3(D)) drafted by plaintiffs, which reads as follows:

> SAVE acknowledges that Recipient[17] is an active member of the life insurance space and has developed expertise in marketing, administration and has developed proprietary contacts and relationships. SAVE may be exposed to Recipient's ideas and/or contacts and will not circumvent Recipient should SAVE be desirous of utilizing Recipients [*sic*] strategies and/or contacts.

This language, drafted by plaintiff The Simon Law Firm (whose principal, David Simon, is an attorney), unambiguously imposes ***no obligation of confidentiality*** on either defendant.[18] Following a series of recitals, which impose no obligations of any kind, it merely provides that defendants will not "circumvent" plaintiffs in the event that defendants ultimately decide to utilize strategies disclosed by plaintiffs or to do business with "proprietary contacts" introduced to defendants by plaintiffs. NDA, ¶3(D).

By inserting paragraph 3(D) into the NDA, plaintiffs obtained for themselves a "non-circumvention" agreement–***not*** a non-disclosure agreement. Though obligations of non-disclosure and of non-circumvention are frequently incorporated into the same agreements, the courts have held that the two types of obligations are materially distinct from one another. While a non-disclosure agreement protects a party's confidential information from being circulated

---

[17] "Recipient" is defined in the NDA as plaintiff The Simon Law Firm. NDA at 1.

[18] To the extent that the Court may find any ambiguity in the non-circumvention agreement drafted by Mr. Simon, a sophisticated attorney, the doctrine of *contra proferentum* requires that such ambiguity be construed in defendants' favor. *See, e.g., Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 319 (Ill. 1987) ("Ambiguous contractual language is generally construed against the drafter"); *Krause v. GE Cap. Mortgage Servs., Inc.*, 731 N.E.2d 302, 310-11 (Ill. App. Ct. 2000) ("the maxim *contra proferentum* . . . instructs a court to interpret the language of a contract against the drafter when the language of a contract is ambiguous or susceptible to more than one meaning").

generally, a non-circumvention agreement protects against the related, but distinct, threat that a party's actual or potential business partner will "cut [the party] out of the deal."[19]

The Court of Appeals for the Fourth Circuit carefully examined an agreement containing both non-disclosure and non-circumvention provisions in the *Eden Hannon* case, concluding:

> [Plaintiff] chose to include in its agreement with potential investors the noncircumvention clause. Armed with that agreement, [plaintiff] could protect its information by merely showing that an investor was competing contrary to the agreement, *without having to prove that it was actually using [plaintiff's] confidential information.*[20]

*Eden Hannon* makes plain that a non-circumvention agreement–the only type of agreement that protects plaintiffs' purported "trade secrets"–does not protect a party's confidential information from disclosure unless it separately so states. Because **(1)** plaintiffs admit that they disclosed their "New Business Plan" to defendants (Complaint, ¶22), **(2)** the NDA does not require defendants to keep the "Plan" confidential, and **(3)** plaintiffs describe no other "efforts . . . to maintain [the Plan's] secrecy or confidentiality," 765 Ill. Comp. Stat. 1065/2(d)(2), plaintiffs have not stated a claim for trade secret protection in their Complaint. Accordingly, they have not demonstrated any likelihood that they will succeed on the merits of their trade secret claims, and there is no "good cause" for a restraining order prohibiting defendants from disclosing information that was disclosed to them under no obligation of confidentiality.

B.    The "Patent Purchase Agreement" is Not a Contract and is Unenforceable as a Matter of Law.

As set forth above, the Patent Act mandates that ownership of "patents, or any interest therein, shall be assignable in law by an instrument *in writing*."[21] Plaintiffs proffer a *draft* of an agreement–not even the latest draft exchanged between the parties–in support of their allegation that there exists a "valid, binding, and enforceable" contract pursuant to which the '390 Patent

---

[19] *Amakua Dev. LLC v. Warner*, 2007 U.S. Dist. Lexis 49952, *9 (N.D.Ill. 2007).

[20] *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 562 (4th Cir. 1990).

[21] 35 U.S.C. § 261.

6328864v1 999999

was assigned to them.  *See* Ex. B to Complaint.  This **draft** was not signed by either defendant and, remarkably, **was not even signed by plaintiffs**.  Because this purported "Patent Purchase Agreement," on its face, establishes that the parties did not intend to be bound thereby unless and until it was **executed**, and because, in any event, federal law requires any assignment of a patent to be in writing[22], signed by the assignor[23], and filed with the Patent & Trademark Office[24] (none of which was done), plaintiffs can demonstrate no likelihood of success in proving their rights to the '390 Patent, and no "good cause" for an order restraining defendants from alienating their rights in the Patent.

       C.     <u>Plaintiffs Have an Adequate Remedy at Law.</u>

       Plaintiffs' principal argument in support of their purported lack of an adequate remedy at law is the conclusory assertion that their "damages" would be difficult to calculate–an unsupported assertion which the Court need not credit, given plaintiffs' burden of justifying "good cause" for their Motion–and the assertion that "Defendants are virtually insolvent."  Pl. Mem. in Support of Preliminary Injunction at 10.  But this assertion is belied by plaintiffs' own Complaint, which asserts that defendants' patent can be expected to "generate <u>over a billion dollars</u> in revenue within ten years."  Complaint, ¶16.  Plainly, if defendants own an asset that can be expected to generate revenues of that magnitude, there is no reason to believe that they will be unable to respond to a judgment for money damages in the unlikely event that one is ever entered.  Plaintiffs have thus failed to demonstrate "good cause" for the Court to presume

---

[22] *See* 35 U.S.C. § 261.

[23] *See, e.g., Quantum Corp. v. Riverbed Techs., Inc.*, 2008 U.S. Dist. Lexis 11348, *5, *12 (N.D.Cal. Feb. 4, 2008) (dismissing action under § 261 because patentee "did not sign the agreement" authorizing transfer of patent rights; "[t]he decisive fact is that no signature for [patentee] was on the . . . agreement"); *Potlatch Corp. v. Innovations, Inc.*, 189 U.S.P.Q. 436 (N.D. Ill. 1975) ("A patent . . . is assignable in law by an instrument in writing.  35 U.S.C. § 261.  The instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent. . . .  Although no particular form of words is essential, the instrument must be substantially a 'transfer,' actual or constructive, with the clear intent of the assignor to part with his legal interest"); *University Patents, Inc. v. Kligman*, 762 F.Supp. 1212, 1219 (E.D.Pa. 1991) ("An assignment of a patent must be in writing.  The writing must show a clear and unmistakable intent to transfer ownership, and **must be executed by the patentee** or by the patentee's assigns or legal representatives" (citations omitted and emphasis added)).

[24] *See* 35 U.S.C. § 261.

6328864v1 999999

irreparable injury, and their Motion must be denied.

     D.     <u>The Balance of Hardships Substantially Favors Defendants.</u>

A patent, by its nature, is a wasting asset–*i.e.,* an asset with a limited lifespan.[25]  The TRO entered by the state court purported to bar defendants from alienating any interest in the '390 Patent–effectively barring defendants from exploiting their "billion dollar" patent.  Every day defendants are or were restrained from exploiting the Patent is a day they can never get back, as this Court lacks the authority to extend the life of the Patent in the event that a TRO or injunction is later found to be improvident.

Plaintiffs suggest, in their Memorandum in Support of their Motion for a Preliminary Injunction (at page 12), that they should be permitted to give only "nominal" security.[26]  Given plaintiffs' admission that the value of the Patent is **over a billion dollars**, and that it has a remaining lifespan of approximately ten years (Complaint, ¶16), the Court may presume that defendants will sustain damages of approximately $100 million for every year in which they are restrained from exploiting the patent–or damages of nearly $275,000 **per day**.

Plaintiffs' stated desire to avoid posting security in those amounts–indeed, their likely inability to do so–coupled with their failure to demonstrate any likelihood of success of the merits (and therefore, any likelihood of recovering **any** damages), demonstrates that the balance of hardships substantially favors defendants, and that if the TRO could be extended—which it cannot—no good cause would exist to support an extension.

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that Plaintiffs' Motion to Extend Temporary Restraining Order be denied in all respects, that the Court declare the TRO issued by the State Court to be void, expired, and without effect, and that the Court grant

---

[25]  *See* 35 U.S.C. § 154(a)(2) (under current law patents expire twenty years after filing of patent application).

[26]  Under Rule 65(c), plaintiffs are ***required*** to give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Though the Illinois statute, 735 ILCS 5/11-101, contains a similar requirement of mandatory security, the state court that entered the TRO inexplicably failed to demand that plaintiffs post a bond as a condition of their *ex parte* TRO.

13

defendants such other and further relief as it deems just and appropriate.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By:    /s/ Alan R. Lipton_____
       One of the Attorneys for Defendant Alan J.
       Ross

Alan R. Lipton (6225472)
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Chicago, Illinois 06061
(312) 704-3161
fax: (312) 704-3001
alipton@hinshawlaw.com

OF COUNSEL:
David L. Braverman, Esq.
Richard S. Julie, Esq.
BRAVERMAN KASKEY, PC
One Liberty Place, 56th Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 575-3800
dbraver@braverlaw.com

Dated: June 12, 2008

6328864v1 999999

## CERTIFICATE OF SERVICE / NOTICE OF FILING

I hereby certify that on June 12, 2008, I filed a copy of **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND TEMPORARY RESTRAINING ORDER** with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division.  ECF-users will receive notice by operation of the Court's ECF system.


/s/ Alan R. Lipton .
Counsel for Defendant Alan J. Ross

6328864v1 999999

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | Case No.:  08 CV 3256 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge James B. Zagel |
| | ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT A**

**TO MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**TO EXTEND TEMPORARY RESTRAINING ORDER**



Gmail  Calendar  Documents  Photos  Reader  Web  more ▼                    saveassociates@gmail.com | Settings | Older version | Help | Sign out

allegation          Search Mail   Search the Web

Compose Mail        Free NDA PDF Template - www.echosign.com/NDA-Forms - Send And Sign Free Using EchoSign Simple And Easy, Do...  Sponsored Link  < >

Inbox (357)         « Back to Search Results   Report Spam   Delete   More Actions                          ‹ Newer  Older ›

Starred             ### Breach of our Confidentiality and Non-Disclosure Agreement    Inbox  X
                    Label  X

Chats               **Alan Ross to David, bcc: Henry, bcc: Stan**                          · May 23

Sent Mail           Scooter,
                    During a telephone conversation of yesterday afternoon that was initiated by your business associate
Drafts (85)         Nico, he disclosed to me the fact that your organization has presented various items of information
                    regarding the Pooled Benefits Trust to a number of potential end users of the PBT, without my
All Mail            knowledge and consent (written or otherwise). It appears that there has been a breach of our
                    Confidentiality and Non-Disclosure Agreement. Please advise.
Spam (150)          Alan

Trash

Contacts            **...... to me**                                                      · May 23

Alan Ross           **Alan, your information is incorrect. Your allegation is not true.**

Labels              **Alan Ross to David**                                                · May 23
                    I may have articulated the comment he made to me incorrectly in my previous correspondence. Thank
Invite a friend     you for the correction. However, Nico may have said financial institution(s) or other third parties (not
Give Gmail to:      end users of the PBT). Is that the case? Please advise.

Send Invite  98 left

                    **Alan Ross to rjulie**                                               · Jun 3 (8 days ago)

                    « Back to Search Results   Report Spam   Delete   More Actions                          ‹ Newer  Older ›

New window
Print all
Collapse all
Forward all

Would you like to...
Xiop Bros
**687 Highland Avenue
Needham, MA 02494**

Sponsored Links

Non Disclosure Contract
Create professional Non Disclosure
agreements quickly & easily online.
OnlineForms.lawdepot.com

FREE NDA Checklist
10 Key Issues to look for in any Non-
Disclosure Agreement
MutualNonDisclosureAgreement.com

ContractPal
Your contracts online in days
Enforceable electronic signatures
www.contractpal.com

EAG's CaseTrack Software
Manage contracts and agreements.
Alerts to key dates and renewals.
www.case-track.com

More about...
NDA Templates
Non Compete
Non Competition Clause
Confidentiality

About these links

Google Checkout: Sign up for faster and safer shopping.
**You are currently using 1261 MB (18%) of your 6817 MB.**
Gmail view: standard | turn on chat | basic HTML. Learn more
©2008 Google - Terms - Email Flies - Privacy Policy - Program Policies - Google Home

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | Case No.:  08 CV 3256 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge James B. Zagel |
| | ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |


**EXHIBIT B**

**TO MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION
<u>TO EXTEND TEMPORARY RESTRAINING ORDER</u>**

-

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:46 PM 05/23/2008
FILED 04:36 PM 05/23/2008
SRV 080598227 - 4552084 FILE

# CERTIFICATE OF FORMATION

## OF

### BALSHE LLC

**FIRST:**     The name of the limited liability company is:

Balshe LLC.

**SECOND:**     The address of its registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of its registered agent at such address is The Corporation Trust Company.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation as of this 23rd day of May, 2008.

_____
David B. Simon
Authorized Person

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | Case No.:  08 CV 3256 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge James B. Zagel |
| | ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT C**

**TO MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**TO EXTEND TEMPORARY RESTRAINING ORDER**

 **State of Delaware**
The Official Website for the First State 

Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & Local Sites

State Directory | Help | Search Delaware :           (GO)           Citizen Services | Business Services | Visitor Info.

**Department of State: Division of Corporations**

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions    View Search Results    Summary of Charges    Logout

### Entity Details

| | | | |
|---|---|---|---|
| File Number: | **2146059** | Incorporation Date / Formation Date: | **12/11/1987** (mm/dd/yyyy) |
| Entity Name: | **S.T.P. ENTERPRISES, INC.** | | |
| Entity Kind: | **CORPORATION** | Entity Type: | **GENERAL** |
| Residency: | **DOMESTIC** | State: | **DE** |
| Status: | **VOID** | Status Date: | **03/01/1997** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **REGISTERED AGENTS, LTD.** | | |
| Address: | **1220 N. MARKET STREET SUITE 804** | | |
| City: | **WILMINGTON** | County: | **NEW CASTLE** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **(302)421-5750** | | |

Additional Information is available for a fee of $20.00. This information will include current franchise tax assessment, current filing history and more..

Would you like ○ Tax & History Information [ Submit ]

[ Back to Entity Search ]

To contact a Delaware Online Agent click here.

site map | about this site | contact us | translate | delaware.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | Case No.:  08 CV 3256 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge James B. Zagel |
| | ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |


**EXHIBIT D**

**TO MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**TO EXTEND TEMPORARY RESTRAINING ORDER**

Novack and Macey LLP : News Article : Novack and Macey Obtains Emergency Relief to Protect Client's Patent Interest



# novack>macey

- Our Firm
- People
- Litigation Focus
- News
- Contact Us

Novack and Macey LLP

Search

**Browse Attorneys**

Select

Back to News

## Novack and Macey Obtains Emergency Relief to Protect Client's Patent Interest

05-30-2008

Novack and Macey LLP attorneys P. Andrew Fleming, Richard L. Miller II and Richard G. Douglass have obtained emergency relief to protect their clients' interest in a patent and trade secrets. On May 23, 2008, the firm was engaged to represent clients with an interest in an immensely valuable patent as well as trade secrets in the form of confidential business plans. By the next business day, May 27th, the firm filed a 24 page verified complaint and emergency motion in chancery court seeking immediate relief.

On May 28, 2008, the Honorable Kathleen M. Pantle heard argument on the emergency motion from Fleming and Miller. Judge Pantle then granted the motion and entered a temporary restraining order preventing the defendants from transferring any interest in the patent or from disclosing the confidential plans. As requested, Judge Pantle also set a prompt date for the clients' preliminary injunction hearing and granted Fleming's request for expedited discovery.

Both Fleming and Miller have extensive experience in obtaining temporary restraining orders and preliminary injunctions. For more information, please contact either of them at (312) 419-6900.

[ ^ TOP ]

Novack and Macey LLP : News Article : Novack and Macey Obtains Emergency Relief to Protect Client's Patent Interest

**PRINT**

Novack and Macey LLP 100 North Riverside Plaza, Chicago, IL 60606-1501 Phone: (312) 419-6900 Fax: (312) 419-6928 Email Us

© 2008 All Rights Reserved.    Disclaimer    [ Email Login ]

Home    Our Firm    People    Litigation Focus    News

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BALSHE LLC and THE SIMON LAW FIRM   )    Case No.:  08 CV 3256
         )
     Plaintiffs,       )
         )
vs.          )    Judge James B. Zagel
         )    Magistrate Judge Susan E. Cox
ALAN J. ROSS and SAVE ASSOCIATES,   )
         )
     Defendants.      )

**EXHIBIT E**

**TO MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION
<u>TO EXTEND TEMPORARY RESTRAINING ORDER</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 08 CV 3256 |
| | ) | |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | Judge James B. Zagel |
| | ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

<u>**AFFIDAVIT OF STANLEY A. TWAROG**</u>

  Stanley A. Twarog, being first duly sworn under oath deposes and states as follows:

  1. I am a member of Mintz, Levin, Cohn, Ferris, Glovsky and Popo, PC ("Mintz") in Boston, Massachusetts. The firm has no office in the State of Illinois. I have represented Alan Ross and Save Associates ("Defendants") for more than five years in their efforts to commercialize U.S. Patent No. 5,974,390 ("390 Patent").

  2. My representation of Defendants was known to Plaintiff, the Simon law firm, prior to the filing of the complaint in this matter.

  3. Without my knowledge, Plaintiffs set an Emergency Hearing for issuance of a Temporary Restraining Order for 10:45 a.m. on May 28, 2008 in the Circuit Court of Cook County.

  4. Neither I nor anyone to my knowledge in the firm received advanced telephonic notice of Plaintiffs' Emergency Motion. Instead, the I first received notice of the hearing via e-mail on May 27, 2008 after the close of business on the east coast.

  5. Attached hereto as Exhibit "A" and incorporated herein by this reference is a true and correct copy of the May 27, 2008 e-mail from Plaintiffs' counsel, Richard Douglass which appears on its face to have been sent to me at 5:35 p.m. Chicago time (6:35 p.m. Boston time). That e-mail enclosed a .pdf file containing notice of the hearing and constituted my first notice of the Emergency Hearing scheduled for the next morning in Chicago.

  6. I first reviewed that e-mail on May 27, 2008 sometime after 7:00 p.m. east coast

time.

FURTHER, your affiant sayeth not.

_Stanley A. Twarog_
Stanley A. Twarog

SUBSCRIBED and SWORN to
before me this 11th day of June 2008.

_John a Sym_
Notary Public

```
JOHN A. SYM
Notary Public
Commonwealth of Massachusetts
My Commission Expires April 30, 2015
```

2

6328728v1 999999

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | Case No.:  08 CV 3256 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge James B. Zagel |
| | ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT F**

**TO MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**TO EXTEND TEMPORARY RESTRAINING ORDER**

**Subject:** FW: Final Versions of the PBTCo/Newco/Ross Agreements
**From:** "David (Scooter) Simon" <dsimon@stpcorp.com>
**Date:** Mon, 5 May 2008 14:31:19 -0500
**To:** "Alan Ross" <saveassociates@gmail.com>

---

**From:** Nicomedes Sy Herrera [mailto:nh@corridorgroupllc.com]
**Sent:** Monday, May 05, 2008 2:03 PM
**To:** David (Scooter) Simon
**Cc:** Pierre Wolf; David Henritze
**Subject:** Final Versions of the PBTCo/Newco/Ross Agreements

Scooter:

Here are the agreements incorporating the changes we discussed today.  Please review and let me know if you think there should be additional changes.

Nicomedes Sy Herrera
General Counsel

**Corridor Capital Group Holdings LLC**
1230 Avenue of the Americas, 19th Floor
New York, New York 10020
(212) 259-3129 (telephone)
(917) 774-3511 (mobile)

--and--

211 King Street
Chappaqua, New York 10514
(914) 238-2045 (telephone)
(914) 238-2047 (fax)

| **Alan Ross MOU[1].doc** | **Content-Description:** | Alan Ross MOU[1].doc |
| | **Content-Type:** | application/msword |
| | **Content-Encoding:** | base64 |

| **Newco Agreement for Purchase of Pooled Benefits Trust Patent.doc** | **Content-Description:** | Newco Agreement for Purchase of Pooled Benefits Trust Patent.doc |
| | **Content-Type:** | application/msword |
| | **Content-Encoding:** | base64 |

<u>Agreement Regarding Pooled Benefits Trusts</u>

This Agreement ("Agreement") between and among The Simon Law Firm and Alan Ross ("Ross") (collectively, the "Parties"), is made as of May 6, 2008.

WHEREAS, The Simon Law Firm intends to form an entity ("PBTCo") with several of its partners, including, without limitation, an operating entity affiliated with Corridor Capital Group Holdings LLC ("Corridor"), to pursue the establishment of pooled benefits trusts for various entity-owned life insurance, including, without limitation, bank-owned, company-owned, government-owned , non-profit-owned or insurance carrier-owned life insurance pursuant to Patent No. 5,974,390 (the "'390 Patent"), and all resulting corporate opportunities reasonably arising from such activities (the "Business"); and

WHEREAS, the Parties intend for PBTCo to be a beneficiary of this Agreement at such time that PBTCo is formed; and

WHEREAS, The Simon Law Firm or PBTCo, when formed, intends to purchase all right, title and interest in the '390 Patent from one of its current owners and assignees, an affiliated company of the AXA Group, as successor in interest to the Mutual Life Insurance Company of New York ("AXA");

**NOW THEREFORE, FOR THE MUTUAL CONSIDERATION SET FORTH HEREIN, IT IS HEREBY AGREED THAT**

1.      The Simon Law Firm, or PBTCo when formed, shall pay Ross $14,200 per month for 12 months beginning June 1, 2008.

2.      Ross shall provide consulting and marketing services to The Simon Law Firm and PBTCo when formed.  Ross agrees that he shall not engage in any activities competitive with the Business during such time that he receives any payment pursuant to this Agreement and for a period of three (3) years after receipt of the last payment hereunder, except as specifically allowed herein.

3.      The Simon Law Firm or PBTCo, when formed, shall pay Ross 10% of the net profits of the Business (the "Net Sharing Percentage").  Ross shall also be entitled to 10% of the proceeds of the sale of PBTCo.

4.      The Simon Law Firm or PBTCo, when formed, shall pay Ross a percentage (the "Ross Sharing Percentage") in the amount of 80% of the net profits solely related to (a) enrollment and renewal fees and (b) replacement and other insurance-related commissions relating to the exchange of policies under 26 U.S.C. § 1035, generated by policies obtained or otherwise enrolled by Ross in one or more pooled benefits trusts (the "Trusts") to be established by The Simon Law Firm or PBTCo, as appropriate, pursuant to the '390 Patent (such net profits undiminished by the Ross Sharing Percentage, the "Ross Generated Profits").  In applying the Ross Sharing Percentage to the Ross Generated Profits to determine any payments to be made to Ross, the amount of any payments made under the Net Sharing Percentage as set forth in

Paragraph 3 attributable to Ross Generated Profits shall be excluded to avoid double-counting. For the purposes of clarity, the Ross Generated Profits exclude all profits not directly obtained from enrollment and renewal fees charged to participants in the Trust, or replacement insurance and 1035 exchange commissions obtained from third-parties. Such excluded profits include, without limitation, profits arising from the capture of enhanced yield of enrolled policies and the purchase or distribution of policies by PBT or its affiliates from participants in the Trust, including, without limitation, policies for insured lives over 70 years old.

   5. Upon the aggregate payment of $250,000 in expenses or other capital expenditures by the investors in PBTCo and approved by Ross, not unreasonably withheld, relating to Ross-generated or joint business expenses or capital requirements (and excluding the purchase price of the '390 Patent), the Ross Sharing Percentage shall be decreased to 75% for all Ross Generated Profits obtained from that point forward. The Ross Sharing Percentage shall decrease 5% for every additional $250,000 in such expenses or other capital contributions made by the investors in PBTCo, provided that the Ross Sharing Percentage shall never fall below the 10% Net Sharing Percentage set forth in Paragraph 3.

   6. The Simon Law Firm or PBTCo, when formed, shall grant Ross a non-exclusive licenses (the "License") to enroll policies into the Trust, provided that all documents, marketing materials and other information provided by Ross to any customer or potential customer must first be approved by The Simon Law Firm or PBTCo, when formed. Ross agrees not to approach or otherwise solicit any customers without the prior written approval of The Simon Law Firm or PBTCo, when formed.

   7. Once the sum of all payments to Ross under this Agreement equals or exceeds $15,000,000.00, the Ross Sharing Percentage shall decrease to zero percent (0%). After that point, Ross's total compensation shall be solely from the Net Sharing Percentage described in Paragraph 3. Notwithstanding the foregoing, Ross and any of his natural children shall be entitled to continue receiving commissions pursuant to the License at market rates, provided that all documents, marketing materials and other information provided by Ross and any of his natural children to any customer or potential customer are first approved by PBTCo. For the purpose of clarity, such commissions pursuant to the License are separate and distinct from the Ross Sharing Percentage and the Net Sharing Percentage.

   8. Ross shall have the right to purchase the '390 Patent from PBTCo if Ross is not paid at least the following sums by PBTCo and/or any other entity or joint venture holding an interest in the '390 Patent, exclusive of the Ross Sharing Percentage: (a) a total of at least $1,350,000 in the aggregate within twenty-five (25) months of the effective date of this Agreement; (b) a total of at least $2,700,000 (including any payments made during the first twenty-five (25) months) within forty (40) months of the effective date of this Agreement; and (c) a total of at least $5,400,000 (including any payments made during the first forty (40) months), within sixty (60) months of the effective date of this Agreement. The purchase price shall be $475,000, plus 12% interest as of April 1, 2009.

9.      This Agreement shall be governed under the laws of the State of Delaware.  The Parties consent to the jurisdiction of the state or federal courts of New York for the resolution of any and all disputes hereunder and agree to all legal, equitable and injunctive relief to enforce the rights and obligations under this Agreement.

10.      The Parties agree and acknowledge that the terms of this Agreement have been mutually negotiated between the Parties, and any rule of construction to construe ambiguous terms against the drafter is inapplicable.

11.      The Parties acknowledge that their respective rights and obligations are intended to be included in future documents to be executed by the Parties, including, without limitation, marketing, brokerage, service and other agreements in connection with the Business, and any necessary agreements with PBTCo once that company is formed.  The Parties therefore agree to cooperate in good faith to execute any and all necessary documents to effectuate the terms of this Agreement.

12.      This Agreement may be signed in counterparts and exchanged by facsimile, with each copy having the validity as an original whole.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the first date set forth above.

ALAN ROSS


_____

Date:


THE SIMON LAW FIRM


By:_____
        David Simon
Its:
Date:

3

<u>Agreement for Purchase of Pooled Benefits Trust Patent No. 5,974,390</u>

This Agreement ("Agreement") between and among Newco, LLC ("Newco"), on the one hand, and Alan Ross ("Ross") and SAVE Associates (Ross and SAVE Associates together, "SAVE") (Newco, Ross and SAVE Associates collectively, the "Parties"), is made as of May 6, 2008.

WHEREAS, Newco intends to purchase all right, title and interest held by SAVE in Patent No. 5,974,390 for the establishment of trusts for various entity-owned life insurance (the "'390 Patent");

**NOW THEREFORE, FOR THE MUTUAL CONSIDERATION SET FORTH HEREIN, IT IS HEREBY AGREED THAT**

1.      Newco will pay SAVE $75,000 by May 16, 2008.  In return, SAVE shall assign to Newco all ownership and rights to the '390 Patent held by Ross and SAVE Associates, and any of their affiliates, parents and assigns.

2.      Ross shall have the right to purchase the '390 Patent from Newco if and only if Ross is not paid at least the following sums by Newco and/or any other entity or joint venture holding an interest in the '390 Patent, exclusive of all payments made relating to policies obtained or otherwise enrolled by Ross in one or more pooled benefits trusts to be established pursuant to the '390 Patent:  (a) a total of at least $1,350,000 in the aggregate within twenty-five (25) months of the effective date of this Agreement; (b) a total of at least $2,700,000 (including any payments made during the first twenty-five (25) months) within forty (40) months of the effective date of this Agreement; and (c) a total of at least $5,400,000 (including any payments made during the first forty (40) months), within sixty (60) months of the effective date of this Agreement.  The purchase price shall be $250,000 plus 12% interest beginning April 1, 2009.

3.      This Agreement shall be governed under the laws of the State of Delaware.  The Parties consent to the jurisdiction of the state or federal courts of New York for the resolution of any and all disputes hereunder and agree to all legal, equitable and injunctive relief to enforce the rights and obligations under this Agreement.

4.      The Parties agree and acknowledge that the terms of this Agreement have been mutually negotiated between the Parties, and any rule of construction to construe ambiguous terms against the drafter is inapplicable.

5.      The Parties acknowledge that their respective rights and obligations are intended to be included in future documents to be executed by the Parties, including, without limitation, any documents necessary to effectuate the assignment and recordation of assignment of the '390 Patent with the United States Patent and Trademark Office.  The Parties therefore agree to cooperate in good faith to execute any and all necessary documents to effectuate the terms of this Agreement.

6.    Ross and SAVE Associates warrant that they have not assigned any right, title or interest in the '390 Patent to any person or entity other than an affiliated entity of the AXA Group, as successor in interest to the Mutual Life Insurance Company of New York ("AXA"), and that they have no reason to believe that AXA has transferred any or all of its right, title or interest in the '390 Patent to any other person or entity.

7.    This Agreement may be signed in counterparts and exchanged by facsimile, with each copy having the validity as an original whole.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the first date set forth above.

ALAN ROSS

_____

Date:

NEWCO

By:_____
        David Simon
Its:
Date:

SAVE Associates

By:_____
        Alan Ross
Its:
Date:

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | Case No.:  08 CV 3256 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge James B. Zagel |
| | ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT G**

**TO MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION
<u>TO EXTEND TEMPORARY RESTRAINING ORDER</u>**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM | ) | Case No.: 08 CV 3256 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge James B. Zagel |
| | ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DEFENDANT ALAN J. ROSS

Defendant Alan J. Ross deposes and states as follows:

1. I am an adult individual, a defendant in the above-captioned matter, and sole proprietor of SAVE Associates ("SAVE"), a defendant in the above captioned matter.

2. I make this declaration upon personal knowledge and, if called to do so, could competently testify to the matters set forth herein.

3. I understand that my counsel in this matter has filed or is planning to file with the Court, on behalf of myself and SAVE, a "Memorandum in Opposition to Plaintiffs' Motion to Extend Temporary Restraining Order" (the "Memorandum").

4. I have reviewed the "Factual Background" section of the Memorandum.

5. I hereby affirm that the factual averments set forth in such "Factual Background" section of the Memorandum are true and correct to the best of my knowledge, information, and belief.

6. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 11, 2008 in the Commonwealth of Massachusetts

_____
ALAN J. ROSS