UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BALSHE LLC and THE SIMON LAW FIRM, | ) | |
| Plaintiffs, | ) ) | Case No. 08 CV 3256 |
| v. | ) ) | Judge James B. Zagel |
| ALAN J. ROSS and SAVE ASSOCIATES, | ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN
FURTHER SUPPORT OF THEIR CROSS-MOTION
TO ENFORCE THE SETTLEMENT AGREEMENT**

Plaintiffs Balshe and the Simon Firm, by their attorneys, Novack and Macey LLP, respectfully submit this reply memorandum of law in further support of their Cross-Motion.[1]

## ARGUMENT

Plaintiffs originally filed this case on May 27, 2008 because Plaintiffs purchased a Patent[2] from Defendants that -- to this day -- Defendants have failed to deliver. (Complaint ¶¶ 1, 30, 38.) The Cross-Motion simply asks the Court to enforce the Settlement Agreement by compelling Defendants to deliver this Patent.

There exists no reasonable dispute that Defendants are obligated to transfer the Patent. Paragraph 2 of the Settlement Agreement obligates Defendants to "execute all necessary documents to assign to Newco [*i.e.*, IPB] all right, title and interest in the Patent held by Ross and SAVE, and any of his/their affiliates, parents and assigns." Plaintiffs have paid for the Patent, and Defendants have accepted payment. Nevertheless, two years after executing the

---

[1] Capitalized terms used but not defined have the meaning given them in Plaintiffs' Memorandum of Law in Support of their Cross-Motion to Enforce the Settlement Agreement and in Opposition to Defendants' Motion to Compel Compliance with the June 26, 2008 Settlement Agreement (Docket No. 38) (Plaintiffs' "Opening Memorandum").

[2] Patent No. 5,974,390 (the "Patent").

Settlement Agreement, Defendants still have not transferred the Patent. They offer two excuses for failing to honor their agreement. Both lack merit.

I.  **Defendants' Excuse that No Entity Has
    Been Formed to Receive the Patent is False**

Defendants claim that they have not assigned the Patent to Plaintiffs because "there was no destination to which Defendants could assign their interest in the Patent."[3] This is demonstrably false. IPB was validly formed to own and commercially exploit the Patent.

Defendants claim that IPB is not a proper entity to receive the Patent because it was formed one month before the Settlement Agreement was executed. (Response at 5.) This is a *non sequitur*. The Settlement Agreement states that the "form and jurisdiction" of the entity to own the Patent "shall be as mutually agreed to by Balshe and MC." (Settlement Agreement, ¶ 1.) IPB was formed in May 2008 to be the corporate entity through which Plaintiffs intended to own and exploit the Patent. After the Settlement Agreement was executed in June 2008, Balshe and MC agreed to use IPB as the entity that would own and commercially exploit the Patent.[4] Accordingly, Balshe and MC executed IPB's Operating Agreement for that purpose. (Opening Memorandum, Ex. C.)

Defendants do not deny that Plaintiffs have since contributed over $1 million to front the expenses of IPB. (Opening Memorandum, Ex. B (the Herrera Aff.), ¶ 9.) MC has fronted expenses of similar magnitude. In causing IPB to incur these expenses, all the parties to the

---

[3] See Defendant's Opposition to the Plaintiffs' Cross-Motion to Enforce the Settlement Agreement and their Supporting Memorandum (Docket No. 41) (the "Response"), at 4-7.

[4] When Plaintiffs commenced this litigation, MC claimed that Defendants *also* sold them the Patent. MC therefore supported Defendants by paying for Defendants' attorneys' fees. MC was a signatory to the Settlement Agreement because it was the corporate entity backing Defendants. In Defendants' current motion, however, Defendants purport to *sue* MC for violating the Settlement Agreement. There is no dispute, however, that Plaintiffs and MC have mutually agreed to own and commercially exploit the Patent through IPB, which until that point was a dormant entity that had conducted no independent operations.

2

Settlement Agreement -- including Defendants -- recognized that IPB would be the entity to own the Patent. Consistent with this understanding, Aon Consulting's Actuarial Fairness Opinion concerning the Patent (Opening Memorandum, Ex. E) was issued to IPB. Defendants' suggestion that IPB is not the proper entity to receive the Patent is mere pretense.

Defendants' argument is also belied by their conduct. Defendants admit that Plaintiffs and MC supplied $500,000 to purchase a portion of the Patent owned by the AXA Group. Paragraph 3 of the Settlement Agreement required Plaintiffs and MC to provide the money to purchase AXA's interest, and Defendants were then to exercise their "option on the AXA Patent Interest on behalf of Newco [*i.e.*, IPB] and immediately assign the AXA Patent Interest to Newco." It is undisputed that Plaintiffs and MC did, in fact, pay $500,000 on behalf of IPB to purchase the AXA Patent Interest, and that Defendants exercised the option to purchase the AXA Patent Interest on behalf of IPB. (Defendants' Motion, ¶ 10.) It is further undisputed that "immediately after the AXA Patent Interest was purchased the Defendants assigned one half of its entire interest in the Patent to the Plaintiff's IPB entity." (Response at 6.) Accordingly, after great expense incurred on behalf of IPB by Plaintiffs and MC, IPB now owns the portion of the Patent formerly held by the AXA Group. It is simply disingenuous for Defendants now to represent to this Court that the reason they have failed to transfer the rest of the Patent to IPB is that "no entity has been formed to receive the assignment." (Response at 4.)

In sum, the parties have all agreed that IPB is the "Newco" referenced in the Settlement Agreement, and they have all acted in accordance with that understanding. IPB is the entity to which Defendants are obligated to assign the remainder of their interest in the Patent.

3

II.     **Defendants' Claim that IPB's Operating Agreement Violates the Settlement Agreement Lacks Merit**

Defendants tell the Court that Paragraph 22 of the "Settlement Agreement specifically requires <u>that all the Parties</u> must participate in the execution of a final Operating Agreement." (Response at 2) (emphasis in the original). This is false. Paragraph 22 of the Settlement Agreement provides that the parties "acknowledge that their respective rights and obligations are intended to be included in future documents to be executed by the Parties" and that they are to "cooperate in good faith to execute any and all necessary documents ...." It does not say that all of the parties have to execute every future document related to IPB. Indeed, nothing in Paragraph 22 contradicts the clear language in Paragraph 1, which states that IPB shall be organized and created "as mutually agreed to by Balshe and MC."

But, even if the Settlement Agreement required Defendants to sign the Operating Agreement, they still have no rights to determine the form of IPB, or participate in its operation. Defendants' signature would therefore be a mere formality. Defendants are thus attempting to avoid their obligations based on what is -- at best -- a technicality.

Defendants' remaining points are a rehash of their arguments in support of their Motion, in which they are requesting the Court to re-write IPB's Operating Agreement. The Court should not attempt to structure the parties' business activities -- and it need not do so. Paragraphs 5 and 8 of the Settlement Agreement make clear that the responsibility for structuring IPB lies "exclusively" with Plaintiffs and MC; Defendants are only entitled to a non-voting right to receive 10% of net profits of IPB. (Settlement Agreement ¶¶ 4, 7, 9.) As such, there is nothing in the Settlement Agreement that gives Defendants the right to approve, re-write or veto any term regarding the operation of IPB.

4

Thus, for example, the Court should not revise the parties' agreement to give Defendants a share of gross revenue instead of net profits. (Response at 8-9.) Similarly, the Court should not entangle itself in running IPB's business by determining the proper procedures for handling lapsed policies -- which Defendants *admit* cannot be found anywhere in Settlement Agreement. (Response at 9-10.)

Likewise, the Settlement Agreement does not require the Court to question the judgment of Aon Consulting in the Actuarial Fairness Opinion that the procedures established by Plaintiffs and MC for handling lapsing policies are necessary to ensure the actuarial integrity of IPB trusts. (Opening Memorandum, Ex. E, ¶¶ 7-10.) Nor is it necessary for the Court to determine whether it would be more efficient for Plaintiffs to "execute direct purchases" of insurance policies should clients exercise their "option" to sell them. (Response at 10.) This Court should further decline to second-guess the business judgment of Plaintiffs and MC in regulating the manner and substance of Defendants' communications with IPB's customers. (Response at 11-12.) Finally, the Court should reject Defendants' invitation to craft additional terms for the Settlement Agreement, such as providing Defendants a right to acquire voting interests in IPB in the event of bankruptcy, or granting Defendants a right to new uses of the Patent. (Response at 12-13.)

The terms of the Settlement Agreement are clear. Defendants are obligated to transfer the Patent to IPB. They are not entitled to any votes or say in the management of IPB.

## CONCLUSION

Plaintiffs' Cross-Motion should be granted. Defendants should be ordered immediately to assign the Patent to IPB; or, in the alternative, the Court should order that the Patent be deemed assigned to IPB and direct Defendants to cooperate with Plaintiffs and MC in preparing and executing any and all paperwork required by the United States Patent and Trademark Office. Pursuant to Paragraph 27 of the Settlement Agreement, Defendants should be ordered to pay

Plaintiffs' reasonable costs and fees (including reasonable attorneys' fees) incurred in bringing their Cross-Motion and responding to Defendants' Motion. Finally, Plaintiffs should be granted such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

BALSHE LLC and THE SIMON LAW FIRM

By: /s/ P. Andrew Fleming
One of Their Attorneys

P. Andrew Fleming
Richard L. Miller II
Richard G. Douglass
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900

Doc. No. 380027

## CERTIFICATE OF SERVICE

I, P. Andrew Fleming, an attorney, hereby certify that I caused a copy of the foregoing *PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR CROSS-MOTION TO ENFORCE THE SETTLEMENT AGREEMENT* to be served upon the following individual via electronic means pursuant to Electronic Case Filing (ECF) procedures:

> Alan R. Lipton
> Hinshaw & Culbertson LLP
> 222 N. LaSalle St., Suite 300
> Chicago, IL 60601-1081
> alipton@hinshawlaw.com

and upon the following individuals via electronic mail and U.S. mail, proper postage prepaid:

> David L. Braverman
> Richard S. Julie
> Braverman & Kaskey, P.C.
> One Liberty Place, 56th Floor
> Philadelphia, PA 19103-7334
> dbraver@braverlaw.com
> rjulie@braverlaw.com

and upon the following individuals via electronic mail and U.S. mail, proper postage prepaid:

> Alan J. Ross
> SAVE ASSOCIATES
> 687 Highland Ave.
> Needham, MA 02494
> saveassociates@gmail.com

on this 20th day of August, 2010.

/s/ P. Andrew Fleming