UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BALSHE LLC and the SIMON LAW FIRM,

    Plaintiffs,

    v.

ALAN J. ROSS and SAVE ASSOCIATES,

    Defendants.

No. 08 C 3256
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. OVERVIEW

The Parties have filed cross-motions to compel compliance with their 2008 Settlement Agreement. Pro se Defendants Alan Ross ("Ross") and SAVE ASSOCIATES ("SAVE") (collectively "Defendants") contend that Plaintiffs Balshe LLC ("Balshe") and Simon Law Firm ("Simon") (collectively "Plaintiffs") have failed to comply with terms of the Settlement Agreement. Plaintiffs argue that Defendants have failed to perform on their obligations under the Settlement Agreement. For the following reasons, Defendants' motion to compel compliance with the Settlement Agreement is granted in part and denied in part.

### II. STATEMENT OF FACTS

The action underlying the contested Settlement Agreement involved a dispute over the purchase of interest in a patent describing a system of pooling life insurance policies into a trust in order to create a predictable income stream for the trust owners (the "Patent"). In 1997 Ross filed an application for the Patent with the United States Patent and Trademark Office ("USPTO"). Ross assigned a one-half interest in the Patent to an affiliate of the AXA Group, and thereafter, Balshe and Defendants reached an agreement regarding the purchase of Ross's interest in the Patent. The underlying lawsuit was filed when Ross allegedly attempted to sell the Patent to a third party. The contested Settlement Agreement ("Settlement Agreement") was reached on June 26, 2008. The parties to the Settlement were Balshe,

Simon, Ross, SAVE, and the Meyer-Chatfield Corporation ("MC"). This court retained jurisdiction to enforce the terms of the Agreement.

As part of the Settlement Agreement the parties agreed to form a new entity "Newco" for the purpose of commercially exploiting the Patent. Newco is now to be known as "Institutional Pooled Benefits LLC" or "IPB." The Settlement Agreement established the rights and obligations of the parties regarding the ongoing ownership, management, and administration of IPB. The Settlement Agreement stated that the form and jurisdiction in which IPB would be organized/created would be mutually agreed upon by Balshe and Meyer, and that the ownership and management of IPB would be in accordance with the Settlement Agreement. Ross and SAVE agreed to execute all necessary documents to assign to IPB right, title and interest held in the Patent. The Settlement Agreement also required that IPB use its best efforts to acquire all right, title, and interest in the Patent.

The parties have been negotiating the terms of the IPB Operating Agreement (the "Operating Agreement"), and numerous drafts have been circulated. Defendants ask that this court order the execution of the December 2009 Draft without the inclusion of certain terms that Ross contends are inconsistent with the terms and conditions of the Settlement Agreement. Defendants further contend that certain provisions referred to in the Operating Agreement, but not contained in the Settlement Agreement, require the approval of all parties to the Settlement Agreement, and without such approval, are invalid. To date, Ross has transferred only a partial interest in the Patent to IPB. The current dispute surrounds the transfer of Ross's remaining interest in the Patent to IPB, and the formation of IPB pursuant to the Settlement Agreement. Because Ross contends that provisions contained in the draft IPB Operating Agreement are inconsistent with terms set forth by the Settlement Agreement, he has refused to transfer his remaining Patent interest to IPB.

**III. DISCUSSION**

As an initial matter, I note that pursuant to the terms of the Settlement Agreement, Ross is obligated to assign the Patent to IPB. Additionally, the validity of the Settlement Agreement is not in dispute. In determining whether certain terms are in compliance with the the Settlement Agreement, I will examine the text of the document and enforce the Settlement Agreement to the extent that it is unambiguous. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009).

Ross and SAVE argue that they have not failed to perform because no entity has been formed to receive the assignment of the Patent. This argument fails. First, Defendants contend that the IPB is not a proper "new" entity because it was not "new" per the terms of the Settlement Agreement. The Settlement Agreement states that "[t]he Parties shall form a new entity for the purposes of exploiting the Patent." IPB, however, was formed on May 22, 2008 prior to the execution of the Settlement Agreement. This argument is unavailing. IPB was formed specifically to be the corporate entity through which Plaintiffs would own and exploit the Patent. Following the execution of the Settlement Agreement, Balshe and MC agreed to use IPB as the entity that would own and commercially exploit the Patent. This is sufficient to meet the conditions set forth in the Settlement Agreement. Furthermore, Defendants' conduct undermines this contention. On September 25, 2008 Defendants assigned one half of the entire Patent interest to the IPB entity. It is undisputed that Plaintiffs and MC paid $500,000 on behalf of IPB to purchase the AXA Patent Interest, and that Defendants exercised the option to purchase the AXA Patent Interest on behalf of IPB. Defendants then assigned one half of its entire interest in the Patent to Plaintiff's IPB entity.

Defendants next contend that the Settlement Agreement requires that all Parties participate in the execution of a final Operating Agreement. This assertion, however, does not comply with a plain reading of the Settlement Agreement. Paragraph 22 of the Settlement Agreement states:

3

> The Parties acknowledge that their respective rights and obligations are intended to be included in future documents to be executed by the Parties, including, without limitation, the documents necessary for the formation of Newco and any documents necessary to effectuate the assignment and recordation of assignment of the Patent with the United States Patent and Trademark Office. The Parties agree to cooperate in good faith to execute any and all necessary documents to effectuate the terms of this Agreement.

This provision does not require that all parties execute current and future documents related to IPB, but provides that all Parties' rights be recognized in the documents necessary to form Newco, now IPB. Additionally, Paragraph 1 of the Settlement Agreement states that:

> The Parties shall form a new entity ("Newco") for the purpose of commercially exploiting the Patent []. The form and jurisdiction in which Newco will be organized/created shall be as mutually agreed to by Balshe and MC. The ownership and management of Newco shall be in accordance with this Agreement.

It is Balshe and MC specifically who are charged with the formation of Newco, and in paragraphs 5 and 8 of the agreement, Balshe and MC exclusively are charged with management duties regarding Newco. Accordingly, the terms provided for within the contested Operating Agreement need not be approved by all parties to the Settlement Agreement, but must comply with the terms of the Settlement Agreement. Defendants argue, however, that certain terms of the IPB Operating Agreement are inconsistent with the Settlement Agreement.

### A.  Shared Expenses

Defendants dispute the use of the term "shared expenses" in the December 2009 draft of the agreement. Specifically, Section 5(a)(1) states that prior to making the initial distributions of "Distributable Cash", up to $1,000,000 of the distributable cash from net trust profits will be diverted to repay Simon and MC for "out of pocket costs and expenses," without distributing Ross his 10% share, thereby causing Ross to assume up to $100,00 of unanticipated costs.

The Settlement Agreement provides that Newco's net profits, not gross profits, will be divided with 10% of such profits being paid to SAVE. Paragraph 14 of the Settlement Agreement also provides that:

4

> The Parties agree to share on a 50%/50% basis between Balshe and MC all expenses incurred after the date of this Agreement, which are necessary to develop the business of Newco, including, without limitation, the procurement of additional patents.

Defendants argue that by "share" the Settlement Agreement meant "front." Accordingly, Plaintiffs and MC should be entitled to reimbursement of such expenses provided IPB is profitable. This interpretation is consistent with Paragraphs 7 and 9 of the Settlement Agreement which state that SAVE is entitled to receive a share of "net profits." I do not find the shared expenses provision of the Operating Agreement in violation of the Settlement Agreement.

### B. Procedures Covering Policy Lapses

Ross admits that lapse policies were not referenced in the Settlement Agreement, yet maintains that the inclusion of these provisions, without his approval, violates the Settlement Agreement. Principally, Ross notes that the lapse procedures could allow for "gaming" of the Trust. Ross's argument, however is without merit. The terms of the Settlement Agreement charge MC and Balshe exclusively with the right to manage Newco's business and I find no provision of the Settlement Agreement that is breached by the Operating Agreement's lapse policy. Accordingly, I do not find the Operating Agreement's lapse policy in violation of the Settlement Agreement.

### C. BOLI Policy Purchase Rights

Ross argues that there is no provision in the Settlement Agreement that confers upon Plaintiffs the right to execute direct purchases. Paragraph 12 of the Settlement Agreement states that "banks or companies that decide to assign the NAR of any policies held by them into a PBT Trust may be given, prior to enrollment of such policies an option for BOLI and/or option or mandate for COLI and/or GOLI, as appropriate, to sell policies on lives approximately aged 67 or older to an asset management company affiliated with Balshe or other third-party investors." In Section 6 of the Operating Agreement,

5

Institutional Longevity Assets LLC ("ILA")[1] is given the right to arrange for the "direct purchase" of the Age Policies after a 20-day period has elapsed where the "the Company" must effect the policy purchase. ILA is also given the right to retain compensation related to such a sale. Defendants argue that "there is no provision in the Settlement Agreement that confers upon the Plaintiffs the right to execute direct purchases." It is immaterial whether the right to purchase an aged or lapsing policy is referred to as an *option* or a *right*. As discussed previously, Balshe and MC have the exclusive right to operate IPB. Furthermore, Paragraph 12 of the Settlement Agreement provides that "MC sand SAVE acknowledge and agree that Balshe shall retain all revenues relating to the purchase or sale of an Age Policy." Therefore, regardless of whether the right to purchase is referred to as an option or a right, it is Balshe that retains the revenue. Accordingly, I do not find the Policy Purchase Terms of the Settlement Agreement.

### D. Ross's Right to Dissuade

In Section 6(a) of the Operating Agreement Ross is prohibited from dissuading Trust clients or potential clients from agreeing to allow for a purchase of their policies by ILA. Paragraph 12 of the Settlement Agreement specifically precludes MC from dissuading any banks from selling an Age Policy to Balshe, but is silent as to Ross. Essentially, Ross infers that because the Settlement Agreement does not specifically preclude him from dissuading IPB clients, he has a right to do so. Defendants argue that if Ross were entitled to interfere with the sale of Age policies, it would undermine, and breach, the terms of the Settlement Agreement because the Settlement Agreement provides a mechanism allowing Balshe to purchase Age policies. The Settlement Agreement does not preclude Defendant Ross from attempting to dissuade banks from selling their BOLI policy instead of joining the Trust. The addition of this provision to the Operating Agreement therefore alters the rights of Ross and is impermissible.

---

[1] ILA is a Balshe-related entity formed by Simon subsequent to the execution of the Settlement Agreement.

### E. The Bankruptcy Provisions

Ross concedes that the Settlement Agreement does not address the procedures governing the bankruptcy of IPB's members. Again, as Balshe and MC are the parties charged with running the Business of IPB, Ross does not have a right to intervene. In the course of business, it is probable that issues not contemplated by the Settlement Agreement will arise. These are issues to be resolved through the normal course of business and do not require the input of Defendants. Furthermore, the bankruptcy provision is consistent with the Settlement Agreement because it is clear that Balshe and MC, not Ross were charged with the management of the business. In the event of a bankruptcy, the IPB Operating Agreement affords Balshe and MC the right to purchase the interests of each other and Ross. Because Ross is a non-voting member, he is not given the opportunity to purchase the interest of Balshe or MC. If the terms were otherwise, Ross could become a voting member of IPB and thus violate the terms of the Settlement Agreement.

### F. New Patent Use

Ross states that he has developed additional uses for the Patent that are outside the purview of Section 1 of the Settlement Agreement. However, the Settlement Agreement states in Section 2 that "SAVE and Ross shall execute all necessary documents to assign to [IPB] all right, title and interest in the Patent." Section 3 states that "SAVE shall exercise its option on AXA Patent Interest on behalf of [IPB] and immediately assign the AXA Patent Interest to [IPB]." In accordance with the Settlement Agreement Ross has sold the Patent and no longer is allowed to benefit from its use.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel compliance with the settlement agreement is granted in part and denied in part. Plaintiffs are ordered to strike from the Operating Agreement the provision barring Ross's right to dissuade. Following this amendment, Ross is ordered to transfer his remaining interest in the Patent to IPB in compliance with the Settlement Agreement.

ENTER:

James B. Zagel
United States District Judge

DATE: September 2, 2010