*AM*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**F I L E D**

OCT 1 3 2010
*OCT 13 2010*

JUDGE JAMES B. ZAGEL
UNITED STATES DISTRICT COURT

| | |
|---|---|
| BALSHE LLC and the SIMON LAW FIRM ) | |
| ) | Case No. 08-CV-3256 |
| Plaintiffs ) | |
| ) | Judge James B. Zagel |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES ) | |
| ) | |
| Defendants ) | |

**DEFENDANTS' REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF ITS**
**MOTION FOR RECONSIDERATION**

Defendants Alan J. Ross and SAVE Associates respectfully submit this Reply

Memorandum in further support of their Motion for Reconsideration of the Memorandum

Opinion and Order[1] Entered On September 2, 2010.

**I. Summary of Argument**

It is settled contract law virtually everywhere, as is stated in *Hampton v. Ford* that

"If the contract is unambiguous, the Court will simply enforce it as written". The Court's

Order fails to adhere to this standard because it superimposes terms which categorically

do not appear in the Settlement Agreement and ignore the unambiguous ordinary

meaning of the words, actually and expressly, chosen by the parties. The Order

inadvertently or unintentionally, but nonetheless impermissibly substitutes a subjective

---

[1] The Defendants request that their Motion for Reconsideration of the Memorandum
Opinion and Order Entered on September 2, 2010 be incorporated by reference into this
Document.

view of what might make sense and discards the terms actually employed by the parties. The Order therefore contains errors of law and fact that need to be corrected.

## II. Reply

### Defendants' Motion for Reconsideration ("Motion") Meets the Standard For A Motion to Reconsider

Under Delaware Law and similarly in the Northern District and 7th Circuit, granting a motion for reconsideration is appropriate if (among other factors) it is necessary to "correct manifest errors of law or fact". Max's Seafood ex. rel. Lou-Ann, Inc v Quinteros 176 F.3d 669 (3d Cir. 1999), Caisse National de credit Agricole v CBI Indus., Inc 90 F.3d 601, 606 (7th Cir. 1996). For the reasons contained in the Defendants' Motion for Reconsideration and stated below, the Defendants have indeed met the standard for the granting of their Motion for Reconsideration.

## III. Argument

### A. The Court's Order Disregards the Defendants' Indisputable Fact that the September Operating Agreement Was and Is Invalid.

On August 5, 2010 in their Opposition to the Plaintiffs' Cross-Motion, and for the first time, Defendants presented to the Court an Agreement between Bennett Meyer /Meyer Chatfield, Braverman Kaskey and the Defendants now known as the MRB LLC Agreement (the "MRB Agreement" – Copy Attached as Exhibit A). The MRB Agreement states in its third section that "all management decisions will require the unanimous vote of its (the) Executive Committee" (which is comprised of Ross, Meyer and David Braverman). Despite this restriction it appears that Bennett Meyer CEO of the Meyer Chatfield Corp. entered into what is now purported to be the IPB Operating

2

Agreement as a signatory for the MRB LLC (see Plaintiffs' Memorandum of Law in Support of Their Cross-Motion – Exhibit A), without the required unanimous consent of the Executive Committee (Ross <u>did not</u> approve of this action). A contract entered into by an unauthorized signatory is illegitimate, invalid and unenforceable. Thus, the Operating Agreement is therefore invalid and unenforceable. Further, both Meyer and the Plaintiffs entered into this agreement without disclosure to Defendants. The Order fails to address and thus disregards these irrefutable facts in its Memorandum Opinion and Order (the "Order").

Contrary to Plaintiffs' argument, the Motion for Reconsideration rests on the fact that this unassailable and determinable set of facts <u>was not addressed</u> by the Court in its Opinion. The Order therefore contains errors of law and fact when it states that "Balshe and MC agreed" to various items, "Balshe and MC have the exclusive right to manage or operate IPB" or "Balshe and MC are the parties charged with running the business of IPB", "Ross does not have a right to intervene" and other similar statements. As it pertains to this issue before the Court <u>there is no MC</u> and neither Ross nor Bennett Meyer/Meyer Chatfield have the *individual* right to *anything* in this arrangement. It is the entity now known as MBR that possess the rights cited above and all management decisions regarding the Pooled benefits Trust must be arrived at unanimously. For the Court not to recognize these facts would be an error of law as well as an error of facts.

## B. The Court Should Ignore the Operating Agreement Purportedly Signed in "Mid-September" of 2009.

The fact that this agreement was kept secret from the Defendants (even during subsequent "negotiations" in December of 2009 and January of 2010) adds further

credence to the illegitimacy of the Operating Agreement that was supposedly entered into in September of 2009 (the signature line is undated). By the terms of the Agreement and the Plaintiffs' and Meyer's own actions[2], that all *three* parties were required to sign. On December 11, 2009 after communication between Defendants' counsel during the PBT negotiation process Stanley Twarog, and John Kaskey, an additional Draft Operating Agreement was circulated after which there were additional Draft provisions constructed and discussed. <u>At no time were the Defendants informed in any way that Plaintiffs and Meyer had entered into an Operating Agreement by any of the other Parties.</u> Again, on February 12, 2010 during a telephone call between Stanley Twarog and David Simon during which Simon was reminded that any agreement needed Ross' approval, Simon did not disclose the existence of the September 2009 Agreement. Between February and the date that Defendants filed their Motion to Compel nothing about the Agreement or about the business of PBT was disclosed to Defendants. *Suddenly and conveniently* - three months after the Twarog telephone conversation - only after Defendants sought relief did the existence of this Agreement surface.

Even Plaintiffs' counsel does not dispute the invalidity of Meyer's participation. Rather they incorrectly claim that, at most, the Operating Agreement was an act of ultra vires and that the ultra vires defense is unavailing in this case. To the best of Defendants knowledge Plaintiffs knew of the MRB arrangement during the process of negotiating the Settlement and afterward. Plaintiffs were aware of MC's intention to transfer a portion of

---

[2] From September 2008 to September 2009 all draft agreements had 3 signature lines as well as the December 2009 draft. Thus the uncontested intent and understanding of the Parties is clear. Three signatures are required. It is a manifest error of law to ignore this reality.

its ownership to Defendants[3]. Plaintiffs also refused to allow Ross' 10% to be comingled

with MRB's 45% (see attached email from John Kaskey dated 6/26/08 at 6:36 pm- Copy

Attached as Exhibit B). And unless Plaintiffs reviewed the finalized MRB Agreement

they could not have assured themselves of a fundamental point that *they* imposed upon

MRB. Also, Simon is an experienced lawyer, it is difficult to comprehend how, under

such contentious circumstances, and he would sign this important document without

verifying Meyer's authority to be the other signatory. Where there is only one valid

signatory but at least two[4] are required to make the September 2009 Operating

Agreement a valid and enforceable contract, and where the Plaintiffs knew that such was

required, they can not claim ignorance of that fact now. The September 2009 Operating

Agreement is an invalid contract.

### C. The Court Finding that Balshe and MC Are the Parties Charged With the Formation and Management of Newco (IPB) is a Manifest Error of Law

Leaving aside the fact that MRB is a Party not MC (which no longer exists in terms

of the individual management of IPB), on page 4 (Discussion) of the Order, the Court

points out that paragraph 1 states *"It is Balshe and MC specifically who are charged with*

*the formation of Newco (IPB)"*. In actuality, paragraph 1 does specifically state that -

only - "The form and jurisdiction in which Newco will be organized/created shall be as

mutually agreed; nothing further. No commentary concerning the (or even the word)

*formation* even exists in the entire Settlement Agreement. The Court is also in error when

it relies on the assumption that "Balshe and MC are exclusively charged with

Management duties". The very next sentence in paragraph 1 states "The ownership and

---

[3] See Defendants' Motion to Compel – Exhibit A, ¶4 (last sentence) "MC may transfer a portion of its ownership interest in Newco to SAVE or other third parties"

[4] The Defendants continue to adamantly assert that all three signatures are required.

management shall be in accordance with this Agreement". There is no mention whatsoever of any exclusivity rights that are conferred on Balshe or MC that allows for the obviation of any of the terms, simply because "Balshe and MC (supposedly) have the exclusive rights to manage IPB". The Settlement Agreement specifically states that it is only the terms of the Agreement that dictate how IPB is to be managed[5]. The Court can only rely on the <u>actual language within the text</u> to verify the probity of its relationship to the Operating Agreement. Thus, it is a manifest error in law and fact to make such an assertion.

### D. The Court's Acceptance of Modifications That Are Not Approved By All Three Parties to the Agreement is a Manifest Error of Law

The Order superimposes a number of provisions into the Operating Agreement that are modifications to the Settlement Agreement that did not receive written approval from all three Parties, as required in paragraph 19, such as (1) Shared Expenses[6], (2) Lapse Policy and Bankruptcy Procedures, and (3) Removal of Ross' right to purchase the interest of Balshe or Meyer Chatfield's and thus, were not agreed to by the Parties. These modifications represent manifest error in law that needs to be corrected.

---

[5] As Defendants have stated in its previous briefs the only reference to the delegation of management responsibilities that is resident in the Settlement Agreement only appears in two sentences; one in paragraphs 5 and one in Paragraph 8:
  ¶5 (first sentence) - MC (MRB) shall have the exclusive right to manage ...BOLI.......
  ¶8 (first sentence) – Balshe shall have the exclusive right to manage...COLI/GOLI....
The 2008 Settlement Agreement is completely silent as to any joint management requisites.

[6] On page 5, line 1 the word "Defendants" is used. I believe the Court mean to use Plaintiffs since the Defendants position is the exact antithesis of that statement. Clarification is requested.

**E. Conclusion**

For the reasons stated above the Defendants respectfully request that their Motion

for Reconsideration should be granted. The Defendants respectfully request the Court to

do so.

                                      Respectfully,

                                      Alan J. Ross and SAVE Associates

                                      By: _____
                                            Alan J. Ross, Pro Se

Alan J Ross
974 Dedham Street
Newton, Massachusetts 02459
(617) 431-7987


**CERTIFICATE OF SERVICE**

I, Alan J. Ross, hereby certify that a copy of the above Defendants' Reply in Further
Support of its Motion for Reconsideration was served upon the following individuals:

By email and first class mail, postage prepaid:

                        P. Andrew Fleming
                        Novack and Macey LLP
                        100 N. Riverside Plaza
                        Chicago, Illinois 60606

By first class mail, postage prepaid:

                        David L. Braverman
                        Braverman & Kaskey
                        One Liberty Place, 56th Floor
                        Philadelphia, Pennsylvania 19103-7334


On this 8th day of October, 2010    _____
                                         Alan J. Ross

# EXHIBIT A

## AGREEMENT

This Agreement ("Agreement") is made the 26th day of June 2008, by and among Bennett Meyer ("Meyer"), a Pennsylvania resident, with an address at The Pavilion, 261 Old York Road, Suite 614, Jenkintown, PA 19046, Meyer Chatfield, Corp. ("MC"), a Pennsylvania corporation, with a principal place of business at The Pavilion, 261 Old York Road, Suite 614, Jenkintown, PA 19046, Alan J. Ross ("Ross"), a Massachusetts resident, with an address at 687 Highland Avenue, Needham MA 02494, and The Alan J. Ross Insurance Agency, Inc., dba SAVE Associates ("SAVE"), with a principal place of business at 687 Highland Avenue, Needham MA 02494 and Braverman Kaskey PC ("BK"), a Pennsylvania professional corporation with a principal place of business at 1650 Market Street, 56th Floor, Philadelphia, PA 19103.

## W I T N E S S E T H:

WHEREAS, Ross and/or SAVE is/are the owner of a fifty percent (50%) ownership interest in United States Patent No. 5,974,390 (the "Patent");

WHEREAS, Balshe LLC and the Simon Law Firm (the "Plaintiffs") have filed suit against Ross and SAVE in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, contending breach of contract and that the Plaintiffs are the owner of the Ross/SAVE interest in the Patent (the "Litigation");

WHEREAS, Ross and SAVE engaged BK to represent them in the Litigation on a contingency fee basis;

WHEREAS, BK accepted such engagement to represent Ross and SAVE in the Litigation;

WHEREAS, Ross and SAVE require substantial funds in order to commercially exploit the patent;

WHEREAS, Meyer and MC are willing to provide the funding and insurance expertise to commercially exploit the patent;

WHEREAS, Ross, SAVE, Meyer and MC have agreed to a settlement of the Litigation (the "Settlement") which is embodied in that certain written settlement agreement dated June 26, 2008 by and among Balshe LLC, The Simon Law Firm, Ross, SAVE and MC (the "Balshe Settlement Agreement");

WHEREAS, the Settlement will result in the Patent being owned by a newly formed created entity (the "Patent Entity") which will be partially owned by Plaintiffs, SAVE and MC or its designee; and

WHEREAS, as a result of the Settlement and the attendant shift in the economics created thereby, the parties hereto have agreed to the terms of a new arrangement which shall supersede their prior written agreement dated June 5, 2008 (the "June 5 Agreement");

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1.    **Transfer of Ownership of Patent.**

Ross and SAVE shall transfer all of their right, title and interest in the Patent to the Patent Entity in accordance with the terms of the Balshe Settlement Agreement.

2.    **Ownership of Newco and Division of Proceeds/Income.**

(a)    MC shall cause the forty five percent (45%) voting equity interest that it will receive in the Patent Entity pursuant to the terms of the Balshe Settlement Agreement to a limited liability company to be formed by BK ("Newco"). The initial ownership of membership interests in Newco shall be as follows: (a) BK and/or its shareholders shall receive a 22.23% equity ownership interest; (b) Ross shall receive a 25% equity ownership interest; and Meyer shall receive a 52.77% equity ownership interest. MC, Meyer and BK each acknowledge and agree that Ross shall be the sole owner of the of 10% non-voting equity interest that he will receive in the Patent Entity pursuant to the terms of the Balshe Settlement Agreement (the "Ross 10% Interest"), and that MC, Meyer and BK shall not have any right to share in any revenue or sale proceeds Ross receives with respect to the "Ross 10% Interest.

(b)    In the event that after the initial formation of Newco, a new investor is sold an equity interest in Newco or an interest in Newco's cash flow derived from the Patent Entity, the parties will effectuate such sale, and split the sale proceeds, through a pro rata sale of their respective percentage equity ownership interests in Newco.

(c)    All distributions of BOLI PBT Profits, IOLI PBT Profits, COLI PBT Profits and GOLI PBT Profits that Newco receives from the Patent Entity shall, after the payment of Newco's expenses, be divided and distributed as follows: (i) 17.09% to BK; (ii) 31.67% to Ross; and (iii) 51.24% to Meyer. MC, Meyer and BK each acknowledge and agree that they shall not have any right to share in any distributions of BOLI PBT Profits, IOLI PBT Profits, COLI PBT Profits and GOLI PBT Profits that Ross receives from the Patent Entity with respect to the "Ross 10% Interest and that such distributions shall belong exclusively to Ross.

2

**3.** **Management of Newco.**

(a) Management of Newco shall initially be governed by a three (3) member executive committee (the "Executive Committee"), comprised of Meyer, Ross and David L. Braverman. Prior to the sale of an equity interest in Newco to a new investor, all management decisions will require the unanimous vote of the Executive Committee. Subsequent to the sale of an equity interest in Newco to a new investor, all management decisions for Newco will require the affirmative vote of members holding 65% or more of the membership interests in Newco.

(b) No member of Newco, without the prior consent of the Executive Committee, shall be authorized to pay or obligate Newco to pay any sum in excess of $10,000 on any one item.

**4.** **Compensation to and Obligations of Ross.**

(a) Meyer shall cause MC to pay Ross: (i) $13,333 per month for 6 months, the first such payment to be made on August 1, 2008, with each subsequent payment to be made on the 1st day of each succeeding month; and (ii) $6,666 per month for the succeeding 6 months. Notwithstanding anything herein to the contrary, in the event that: (i) after the initial formation of Newco, a new investor is sold an equity interest in Newco or in interest in Newco's cash flow (either through a direct investment in Newco or through a sale of a portion of Ross's, Meyer's and BK's ownership interests in Newco); (ii) after the initial formation of the Patent Entity, a new investor is sold an equity interest in the Patent Entity or an interest in the Patent Entity's cash flow and/or (iii) Ross receives distributions of cash flow from Newco and/or the Patent Entity in an amount equal to or in excess of the payments MC is obligated to pay to Ross under the preceding sentence, Meyer and MC shall not have any obligation to make any of the remaining monthly payments set forth in the preceding sentence.

(b) Ross agrees that upon the formation of Newco, for a minimum period of two (2) years, he will work exclusively for MC and will not engage in external employment or consultancy work, that he will use his best efforts to sell new BOLI and COLI insurance cases in conjunction with MC's sales representatives. Ross will execute MC's standard form sales representative agreement and shall be entitled to commissions on sales of BOLI and COLI based upon the same commission schedule MC uses with its other sales representatives. Meyer, will cause MC's staff, located at MC's Jenkintown, Pennsylvania offices, to provide Ross with administrative assistance with respect to Ross's sales efforts. Ross will pay his own expenses when traveling to Jenkintown, PA or anywhere within a 100 mile radius thereof. MC will pay Ross's expenses for any other travel in the course of his duties for MC in accordance with the terms of MC's standard form sales representative agreement.

3

(c)     Notwithstanding the provisions of subsection (b), Ross shall be permitted to enroll policy owners into PBT Trusts created and/or controlled by the Patent Entity and to receive fees regularly paid by the Patent Entity and/or PBT Trusts to other persons with respect to such policy enrollments.

5.     **Obligations of Meyer.**

Meyer shall pay all costs associated with setting up of Newco.

6.     **Obligations of BK.**

(a)     BK will represent Ross, SAVE, Meyer and MC in the settlement of the Litigation, set up Newco and advise Ross, SAVE, Meyer and MC on the best form of entity and the jurisdiction in which the Patent Entity should be formed.

(b)     Ross and SAVE each acknowledge and agree that BK currently represents Bennett Meyer and MC in a variety of matters unrelated to the Litigation and that regardless of any dispute that may arise under this Agreement or otherwise, BK shall be free to represent Bennett Meyer and/or MC in such matters. Ross and SAVE each further acknowledge and agree that BK has advised each of them that while the interests of all of the parties to this Agreement are currently aligned with respect to the Litigation and the Settlement, there is a substantial risk that a conflict of interest may arise between their respective interests and that if a conflict of interest does arise among them, BK shall be free to represent it own interests as well as those of Bennett Meyer and/or MC in any dispute with Ross, SAVE, Newco and/or the Patent Entity.

7.     **Representations and Warranties of Ross and SAVE.**

Ross and SAVE each represents and warrants to Meyer, MC and BK that:

(a)     he/it has the power to execute, deliver and perform under this Agreement and no consent of any other party and no consent, license, approval or authorization of, or registration or declaration with, any governmental authority, bureau or agency is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement;

(b)     this Agreement, when executed by all parties, will constitute valid obligations of Ross/SAVE, legally binding upon him/it and enforceable in accordance with its terms;

(c)     the execution and delivery of this Agreement and the performance under this Agreement by Ross or SAVE will not violate or contravene any provision of any existing decree of any court, governmental authority, bureau or agency or any other agreement to which Ross or SAVE is a party;

4

(d)    with the exception of the Litigation no actions, suits or proceedings before any court or governmental department or agency are pending or, to his/its knowledge threatened against , which would prevent Ross or SAVE from performing his/its duties under this Agreement;

(e)    Ross or SAVE has no ongoing relationship with any competitor of MC and is free to enter into this Agreement, unencumbered by any contractual or other restrictions;

(f)    Ross and/or SAVE is the owner of a fifty percent (50%) interest in the Patent, that such interest in the Patent is free of any lien or encumbrance and that he/it has the absolute right to assign such interest in the Patent to the Patent Entity;

(g)    SAVE has less than $125,000 of outstanding debt/obligations, that no creditor has any interest in or lien or encumbrance on the Patent and that neither MC, Meyer or BK has any liability for SAVE's outstanding debt/obligations; and

(h)    SAVE and Ross have had the opportunity to be represented by counsel of their own choosing, understand this Agreement and knowingly and voluntarily have entered into this Agreement.

### 9.    Indemnification.

SAVE and Ross shall indemnify, defend and hold harmless, Meyer, MC and BK, and their respective shareholders, directors, officers, employees and agents, from and against any damages, losses, costs and expenses (including attorneys' fees) suffered by any such party, as a result of a breach of this Agreement by SAVE and/or Ross or suffered as a result of the enforcement by Meyer, MC and/or BK of this Agreement. If Meyer, MC and/or BK shall prevail in any action at law or in equity to enforce any provision of this Agreement, SAVE and Ross shall pay Meyer's, MC's and/or BK 's costs and expenses, including attorneys' fees, incurred in enforcing this Agreement.

### 10.    Prior Agreements Superseded.

Each of the parties to this Agreement acknowledges and agrees that this Agreement supersedes the June 5 Agreement in its entirety.

### 11.    Governing Law; Forum Selection.

(a)    This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to the provisions on conflicts of law.

5

(b)     For the purpose of any suit, action or proceeding arising out of or relating to this Agreement, each of the parties hereby irrevocably consents and submits to the exclusive jurisdiction and venue of any of the Courts of the Commonwealth of Pennsylvania including the Court of Common Pleas of Montgomery County and Philadelphia County and the Federal District Court for the Eastern District of Pennsylvania, and appoints and constitutes the Secretary of State of the Commonwealth of Pennsylvania as his agent to accept and acknowledge on his behalf all service of process in connection with any such matter, copies of which process shall be mailed or delivered to the party being served. Each party irrevocably waives any objection which he or it may now or hereinafter have to the laying of the venue of any suit, action or proceeding brought in such court and any claim that such suit, action or proceeding brought in such a court has been brought in an inconvenient forum and agrees that service of process in accordance with the foregoing sentence shall be deemed in every respect effective and valid personal service of process upon a party hereto.

**12.     Entire Agreement; No Oral Change.** This Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes any and all prior and/or contemporaneous agreements and understandings among the parties hereto, whether oral or written. This Agreement may be amended only by a written instrument duly executed by all of the parties hereto.

**13.     Waivers.** A waiver of a party's rights under this Agreement shall be effective only to the extent set forth in a written instrument executed by the waiving party. No waiver by any party of any misrepresentation or breach (whether intentional or not), in any one or more instances and for any period of time, shall be deemed or construed as a waiver of any prior or subsequent misrepresentation or breach of the same or any other provision. No course of dealing or forbearance, leniency, delay or other omission by a party to assert, exercise or enforce any right or remedy under this Agreement or any other agreement, instrument or document at any one or more times or for any periods of time shall impair or otherwise affect any such right or remedy or any other right or remedy, or be construed to be a waiver or acquiescence; nor shall any single or partial exercise of any right or remedy, or any abandonment or discontinuance of steps to enforce such a right or remedy, preclude any further exercise of the same or any other right or remedy, it being agreed that at all times each party shall have the right to insist upon and enforce strict compliance with each and every provision of this Agreement

**14.     Construction.** The terms "hereby," "herein," "hereof," "hereto" and "hereunder" mean, respective, by, in, of, to and under this Agreement as a whole, not merely to the provision in which such term is used. The term "or" shall be construed to be inclusive and have the meaning of "and/or". The masculine form, wherever used herein, shall be construed to include the feminine and the neuter, and vice versa, where appropriate. The singular form, wherever used herein, shall be construed to include the plural, and vice versa, where appropriate. The definitions in this Agreement shall apply equally to both the singular and plural of the terms defined. The term "include" (and correlative terms, such as

6

"includes" and "including") shall not be construed as a term of limitation in any context but shall be construed as if followed by the words "without limitation." All references in this Agreement to an "Exhibit" or "Section" shall be to such exhibit or section of this Agreement, unless otherwise specifically provided. The captions of Sections are for the convenience of reference only; they form no part of this Agreement and shall not limit or otherwise affect the interpretation of any provision herein.

**15.    Counterparts.**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

**16.    Severability.** Any provision contained in this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

_____

BENNETT MEYER

Meyer Chatfield, Corp.

By:_____

_____

ALAN J. ROSS

The Alan J. Ross Insurance Agency, Inc.

By:_____

Braverman Kaskey P.C.

By:_____
John E. Caskey, Vice President

8

Case: 1:08-cv-03256 Document #: 58 Filed: 10/13/10 Page 17 of 20 PageID #:558

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

_____

BENNETT MEYER

Meyer Chatfield, Corp.

By:_____

_____

ALAN J. ROSS

The Alan J. Ross Insurance Agency, Inc.

By:_____

Braverman Kaskey P.C.

By:_____

8

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

_____
BENNETT MEYER

Meyer Chatfield, Corp.

By:_____

_____
ALAN J. ROSS

The Alan J. Ross Insurance Agency, Inc.

By:_____

Braverman Kaskey P.C.

By:_____

8

# EXHIBIT B



Alan Ross <saveassociates@gmail.com>

# Revised agreement
1 message

**John Kaskey <kaskey@braverlaw.com>**                    **Thu, Jun 26, 2008 at 6:36 PM**
To: saveassociates@gmail.com, "Twarog, Stan" <STwarog@mintz.com>, b.meyer@meyerchatfield.com, David
Braverman <braver@braverlaw.com>, wbmeyer321@comcast.net

I am attaching a revised BMR agreement (clean and blackline) for everyone's review.


The Balshe folks would not allow the aggregation of the MC and Ross percentages (note that I have
adjusted the cash flow sharing formula to correct a prior math error).


Please let me know if you have any questions or comments.


John E. Kaskey
Braverman Kaskey PC
1650 Market Street
56th Floor
Philadelphia, PA 19103
215-575-3910
215-575-3801 (fax)
jkaskey@braverlaw.com


**2 attachments**

  **Ross Agreement - 0602608BK.doc**
  66K

  **Ross Agreement - 062608BKCompare.doc**
  72K