*ACE*

**FILED**

MAR 2 4 2011 **NF**

MAR 24 2011

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BALSHE LLC and the SIMON LAW FIRM | ) | |
| | ) | Case No. 08-CV-3256 |
| Plaintiffs | ) | |
| | ) | Judge James B. Zagel |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| ALAN J. ROSS and SAVE ASSOCIATES | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' REPLY TO PLAINTIFFS BRIEF IN SUPPORT OF THEIR**
**OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

Defendants Alan J. Ross and SAVE Associates hereby submit their Brief in Reply to

Plaintiffs' Brief in Support of their Opposition to Defendants' Motion for Reconsideration. For

the additional reasons set forth below, Plaintiffs' opposition should be denied.

**I.    "Shared Expenses" Contradicts the Plain Language of the Settlement Agreement**

Since May of 2010 Plaintiffs and Defendants have presented with equal certainty and

vehemence, differing accounts of who said what to who and when, and differing interpretations

of the meaning and intent of the June 26, 2008 Settlement Agreement[1]. It really doesn't matter

because Paragraph 19 of the Settlement Agreement casts all of this aside and directs the

Parties, and now the Court, to pay attention only to the words on the page:

> ¶ 19.  This Agreement contains the entire agreement between the
> Parties relating to the rights herein granted and the obligations herein
> assumed.............

---

[1] Plaintiffs complain that Ross did not testify under oath. Ross was present to state Defendants' case as a Pro Se litigant, not a witness. If Plaintiffs desired Ross' sworn testimony they should have called him to the stand and asked for it. His testimony under oath would not have diverged from his presentation as a Pro Se litigant.

*All Parties warrant that no statement, promise, representation, warranty, condition, inducement or agreement of any kind with respect to the subject matter of this Agreement shall be, or has been, relied upon by the respective Party unless specifically contained and incorporated herein.* (Def. ital)

So after all is said and done the controversy, as it regards the Shared Expense language, boils down to whether the language in Paragraphs 7, 9 and 10 essentially obviates the words on the page in Paragraphs 3 and 14. In other words, should the meaning of the term "to share" as it would be ascribed to the parties by a reasonable third Party, be interpreted as "to front". Plaintiffs say yes. Defendants reply, that if "to front" was the intended meaning, Plaintiffs should have said so[2], it would have been easy to do. They did not. The Defendants respectfully assert to the Court that the divergence from the common understanding of the term "to share" is so significant, that should the Court decide that the Plaintiffs' interpretation should prevail, it is taking an eraser to the applicable sentences in Paragraphs 3 and 14 and summarily removing them from the Settlement Agreement.

## II. The Plaintiffs' Charge and Their Activities Regarding the Patent Assignment Are Misleading and Improper

The AXA 50% portion of the Patent (including all rights) was assigned by Defendants to IPB on September 25, 2008 using forms that were supplied by the Plaintiffs (see U.S. Patent Office "Patent Assignment Abstract of Title"[3] attached as Exhibit A). Also, Defendants

---

[2] The Court should disregard negotiating concessions concerning "caps" that were made to avoid returning to Court, that were not met with quid pro quo concessions from Plaintiffs. The proposals have no bearing on what the Parties intended when they executed the Settlement Agreement.

[3] This was discovered by the Defendants only during the course of preparing this brief.

request that the Court note - under Assignment: 4 of the attached Assignment Abstract, dated January 28, 2011 - that apparently the Plaintiffs have *already successfully arranged to effect the assignment of the remaining 50%*, even though they were aware that Defendant's Motion for Reconsideration continued to be under advisement by the Court. Thus, their continuing commentary concerning the status of the Patent assignment, even in their latest Brief, is nothing less than astonishing. This assignment was done without the Defendants knowledge and it is yet another example of Plaintiff's penchant for surreptitiousness[4] in their attempt to exclude Defendants from their rightful participation in the PBT. Defendants respectfully request the Court to overturn this secretly executed assignment until all of the issues in this case are fully and finally resolved.

Similarly, on February 25th while compiling business and 2010 personal income tax documentation (the MRB K-I) Defendants discovered from Mr. Andrew Galinski of the Accounting firm Clairmont , Paciello & Co. - MRB Accountants) that Defendants were never recorded as a Member of IPB, *even from its inception*. The accompanying email (attached as Exhibit B) was forwarded to David Simon (and Bennett Meyer) and the requested information was never provided. As stated above, Plaintiffs have waxed high and mighty and have made a significant and erroneous issue in regard to the Defendants' postponement of the Patent assignment until all issues are resolved privately or by the Court. Yet at the same time they have not complied with the requirement delineated in the very first Paragraph of the Agreement.

### III. John Kaskey's Testimony Was Willfully Misleading

---

[4] See in Plaintiffs' Memorandum in Support of Their Cross-Motion: Exhibit C; executed secretly.

John Kaskey, Defendants' primary counsel during Settlement negotiations, not only violated Attorney Client confidentiality, but also misrepresented Defendants position while doing so (Defendants did not permit Kaskey to appear, let alone as a hostile witness).

Contrary to his sworn testimony, Kaskey <u>did not</u> engage Ross' attorney, Stanley A. Twarog in any specific discussion covering the definition of "net" or "net distributions", which are not even specifically defined in any of the Draft IPB LLC Agreements[5]. Similarly, there was absolutely no discussion as to the meaning and intent of Plaintiffs regarding the term "to share" (see attached Declaration of Stanley A. Twarog as exhibit C).

Moreover, Plaintiffs did not provide Defendants with any advanced notice in regard to their intent to present witnesses, as is required, and Defendants request that Kaskey's misleading testimony be stricken from the record. This should apply to Mr. Herrera's (an employee of the Plaintiffs) biased testimony, for the same reason.

## III. Conclusion

The Defendants *do* realize that during negotiations additional details are added to basic agreements; but in this and probably most instances such modifications may be added "only by a writing signed by all of the parties to this Agreement"[6]. For the reasons stated above the Defendants respectfully request that the Court mandate the elimination of any language concerning "Shared Expenses" from the finalized and executed LLC Agreement between all three of the Parties, and that the Court should compel Plaintiffs to record Defendants as members of IPB.

---

[5] Twarog and Ross were in Boston because Plaintiffs would not permit them to join in person.

[6] See Paragraph 19 of the Settlement Agreement – defendants' Motion to Compel Exhibit A

Defendants also request that the Court grant Defendants' Motion for Reconsideration, which as of this time has not yet been entered as affirmed or denied (most importantly the lapsed policy issue), especially in light of the requirements delineated in Paragraph 19 of the Settlement Agreement.

Alan J. Ross                                    Respectfully Submitted,
687 Highland Avenue
Needham, MA. 02494                              Alan J. Ross and SAVE Associates

                                        By: _____
                                                Alan J. Ross, Pro Se


# CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2011 a copy of the above document was served upon the following individual, the attorney for the Plaintiffs, by first class U.S. Mail, postage prepaid:

P. Andrew Fleming
Novack and Macey
100 N. Riverside Plaza
Chicago, Illinois 60606

_____
Alan J. Ross

# EXHIBIT A

USPTO Assignments on the Web
Case: 1:08-cv-03256 Document #: 66 Filed: 03/24/11 Page 7 of 13 PageID #:591
Page 1 of 2

 **United States Patent and Trademark Office** 

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Assignments on the Web > **Patent Query**

# Patent Assignment Abstract of Title
## NOTE: Results display only for issued patents and published applications. For pending or abandoned applications please consult USPTO staff.

**Total Assignments: 4**

**Patent #:** 5974390      **Issue Dt:** 10/26/1999      **Application #:** 08897293      **Filing Dt:** 07/21/1997

**Inventor:** ALAN J. ROSS

**Title:** SYSTEM AND METHOD FOR ASSURING PREDICTABLE GAINS

## Assignment: 1
**Reel/Frame:** 008653/0951      **Recorded:** 07/21/1997      **Pages:** 4

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** ROSS, ALAN J.      **Exec Dt:** 07/21/1997

**Assignee:** MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
1740 BROADWAY
NEW YORK, NEW YORK 10019

**Correspondent:** ROGERS & WELLS
ROBERT D. SCHAFFER, ESQ.
200 PARK AVENUE
NEW YORK, NY 10166

## Assignment: 2
**Reel/Frame:** 021590/0201      **Recorded:** 09/26/2008      **Pages:** 5

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** MONY LIFE INSURANCE COMPANY      **Exec Dt:** 09/25/2008

**Assignee:** ROSS, ALAN J.
974 DEDHAM STREET
NEWTON, MASSACHUSETTS 02459

**Correspondent:** RICHARD ESKEW
180 MAIDEN LANE
NEW YORK, NY 10038

## Assignment: 3
**Reel/Frame:** 021590/0227      **Recorded:** 09/26/2008      **Pages:** 4

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** ROSS, ALAN J.      **Exec Dt:** 09/25/2008

**Assignee:** INSTITUTIONAL POOLED BENEFITS LLC
303 E. WACKER DRIVE
SUITE 210
CHICAGO, ILLINOIS 60601

**Correspondent:** RICHARD ESKEW
180 MAIDEN LANE
NEW YORK, NY 10038

## Assignment: 4
**Reel/Frame:** 025716/0674      **Recorded:** 01/28/2011      **Pages:** 10

**Conveyance:** MEMORANDUM OPINION AND ORDER

**Assignor:** ROSS, ALAN J.      **Exec Dt:** 09/02/2010

**Assignee:** INSTITUTIONAL POOLED BENEFITS LLC
303 EAST WACKER DRIVE

SUITE 210

CHICAGO, ILLINOIS 60601

**Correspondent:** BLANK ROME LLP

600 NEW HAMPSHIRE AVE. N.W.

WASHINGTON, DC 20037

Search Results as of: 03/19/2011 12:42 PM

If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.1
Web interface last modified: Apr 30, 2009 v.2.1

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

# EXHIBIT B



Alan Ross <saveassociates@gmail.com>

---

# IPB Membership

2 messages

---

**Alan Ross <saveassociates@gmail.com>**        **Fri, Feb 25, 2011 at 5:48 PM**
To: "David (Scooter) Simon" <dsimon@stpcorp.com>
Bcc: "Sullivan, Henry" <hsullivan@mintz.com>, "Twarog, Stan" <SATwarog@mintz.com>

Scooter

As you are aware the Settlement Agreement calls for the formation, by the parties to the agreement
(our three organizations), of a new entity in which ownership is to be divided as specified in Section
4. During a telephone conversation yesterday Andrew Galinski of the accounting firm Clairmont,
Paciello & Co., informed me that only MRB and ILA are listed as members of the Institutional
Pooled Benefits LLC, and that IPB K-1 schedules were prepared and distributed for tax years 2008
and 2009 (he indicated that 2010 K-1 has yet to be prepared). I did not receive nor was I made aware
of such schedules. Apparently I have never been a member as required. Please immediately forward
to my attention copies of the 2008, 2009 and 2010 (when prepared)schedules and any other pertinent
information so that I may determine the accuracy of the information I received.

Alan

--
Alan J. Ross; President
SAVE Associates
687 Highland Avenue
Needham MA 02494
617-431-7987
617-970-1377-Cell

---

**Alan Ross <saveassociates@gmail.com>**        **Fri, Feb 25, 2011 at 6:09 PM**
To: Alan Ross <SAVEassociates@gmail.com>

[Quoted text hidden]

---

# EXHIBIT C

DECLARATION OF STANLEY A. TWAROG, ESQ.

Stanley A. Twarog deposes and states as follows:

1   I am over age twenty-one (21), have knowledge of the facts set forth
    herein and could competently testify thereto if called as a witness.

2   I am a Member of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
    and practice in its Boston, Massachusetts office.

3   I advised SAVE Associates and Alan J. Ross during the negotiation of the
    June 26, 2008 Settlement Agreement (the "Settlement Agreement"). The
    firm of Braverman Kaskey PC served as primary counsel to SAVE
    Associates and Alan J. Ross during the negotiation.

4   I served as counsel to SAVE Associates and Alan J. Ross in connection
    with negotiation of the Institution Pooled Benefits Limited Liability
    Company Agreement (the "Operating Agreement"). To my knowledge,
    neither SAVE Associates, Mr. Ross nor any affiliate has agreed to or
    executed the Operating Agreement.

5   It was and continues to be my understanding that distributions pertaining
    to the operating income of the PBT Trust were to be net of the operating
    expenses associated with the generation of the various fee and other
    revenue inflows into the Trust.

6   John Kaskey did not at any time during the Settlement Agreement
    negotiation engage me in any specific discussion concerning the definition
    of "net" or "net distributions". Similarly, I did not participate in any
    discussion as to the meaning or intent of the Plaintiffs regarding the term
    "to share".

7   It was and continues to be my understanding that any and all costs and
    expenses incurred after the date of the Settlement Agreement that were
    and are necessary for the development (as distinguished from the
    operation) of the business of "Newco" (now the "IPB") were to be shared
    (in equal amounts) by "Balshe" (now "ILA") and The Meyer Chatfield
    Corporation ("MC") and that Alan J. Ross in his capacity as an individual
    party to the Settlement Agreement and a 10% non-voting equity owner of
    the IPB entity, would not be required to participate in such costs or
    expenses. Provisions supporting my understanding are to be found in
    Section 3 and 14 of the Settlement Agreement. My overall conceptual
    understanding was and continues to be that SAVE Associates/Ross would
    contribute its one-half interest in the U.S. Patent No. 5,974,390 (the

"Patent") and facilitate acquisition of AXA Financial's one-half interest in the Patent, and that MC and Balshe (or an affiliate) would contribute (in equal amounts) the money needed to bring IPB to the stage where it could commence the PBT Trust business.

8      It was and continues to be my understanding that the aforementioned costs and expenses relating to the development of the business of Newco would include but not be limited to expenses associated with (a) the formation and start-up of IPB (b) the acquisition of the AXA Financial, Inc. portion of the Patent and (c) costs associated with the negotiation, preparation and delivery of the Operating Agreement and other costs (including costs associated with satisfying regulatory requirements and developing contracts and marketing materials) incurred after the date of Settlement Agreement for the purpose of commencing the PBT Trust business.

9      Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Stanley A. Twarog

Date: 3/22/11

5350563v.2